OPINION OF THE COURT
Levine, J.
The issue presented by this appeal is whether chapter 13 of the Laws of 1996 is unconstitutional because it was not enacted in compliance with the home rule requirements of article IX, § 2 of the State Constitution. We conclude that because this "special law,” which relates to the "property, affairs or government” of New York City, was not enacted to further a matter "of sufficient importance to the State generally” (Matter of Kelley v McGee, 57 NY2d 522, 538), its enactment without a home rule message from New York City renders the chapter law unconstitutional and unenforceable.
Under Civil Service Law § 209, public employers and the collective bargaining representatives of public safety employees may invoke the assistance of the Public Employment Relations Board (PERB) when they believe an impasse has been reached during collective bargaining negotiations and, if mediation fails to effect a settlement, a binding arbitration panel will resolve the dispute (Civil Service Law § 209 [4]). However, when *386 the binding arbitration procedures were first added to section 209 in 1974, New York City’s collective bargaining law already provided for binding arbitration supervised by the City’s Board of Collective Bargaining (BCB), the City’s "mini-PERB,” when an impasse was reached between the City and any of its employees, including its police and firefighters (Administrative Code of City of NY § 12-311 [enacted as 1173-7.0 in 1967, amended 1972]). In recognition of that existing impasse arbitration mechanism, when initially enacted PERB’s binding arbitration procedures for public safety employees specifically exempted members of New York City’s police and fire departments (L 1974, ch 725 [police]; L 1974, ch 724 [firefighters]).
The City’s earlier establishment of its own procedures for the resolution of bargaining impasses was pursuant to authority which has existed since the enactment of Civil Service Law § 212 in the original Taylor Law (L 1967, ch 392, § 2). That section permits a local government to opt out of certain provisions of the Taylor Law pertaining to PERB’s jurisdiction, including the impasse procedures of section 209, by enacting through local law, procedures which are "substantially equivalent” to the corresponding procedures of the Taylor Law (Civil Service Law § 212 [1]).
While all other local governments must submit their local procedures to PERB for prior approval (id.), New York City’s procedures are deemed effective "unless and until * * * found by a court of competent jurisdiction, in an action brought by [PERB] * * * not to be substantially equivalent” to the procedures of the Taylor Law (Civil Service Law § 212 [2]). Although the BCB’s binding arbitration procedures differ in a number of respects from those of Civil Service Law § 209,[1] because PERB has never judicially challenged the variations of the New York City impasse procedures, it must be assumed that PERB has determined that the City’s impasse procedures nonetheless remain substantially equivalent to those set forth in subdivision (4) of Civil Service Law § 209.
The collective bargaining agreement (CBA) between the City and defendant Patrolmen’s Benevolent Association (PBA), the *387 bargaining representative for New York City police officers, expired on March 31, 1995, and the parties were unable to reach an agreement with respect to a successor CBA. In January 1996, under the then applicable procedures, the City requested that the BCB appoint an impasse arbitration panel (see, Administrative Code § 12-311). Also at that time, the bill which was to become chapter 13 and which purported to give PERB exclusive jurisdiction over negotiation impasses between the City and the New York City police, passed both houses of the State Legislature. In February 1996, the Governor vetoed the bill, but it was enacted into law by an override vote shortly thereafter.
Following passage of chapter 13, the PBA sought to transfer to PERB the City’s impasse panel request pending before the BCB and have PERB declare an impasse in negotiations between the City and the PBA. The City objected and commenced this action seeking, inter alia, a declaration that chapter 13 of the Laws of 1996 is unconstitutional because it was passed without a home rule message in violation of New York Constitution, article IX, § 2. PERB and the BCB were joined as necessary parties and the actions of both boards with respect to the impasse requests before them were stayed pending the outcome of this litigation.
On cross motions for summary judgment, Supreme Court declared chapter 13 of the Laws of 1996 unconstitutional, and the Appellate Division affirmed (231 AD2d 422). The appeal is before us as of right on constitutional grounds.
Article IX, § 2 of the State Constitution grants significant autonomy to local governments to act with respect to local matters. Correspondingly, it limits the authority of the State Legislature to intrude in local affairs, by giving it "the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only * * * on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a majority of such membership” (NY Const, art IX, § 2 [b] [2] [emphasis supplied]).[2] Thus, a special law which relates to the property, affairs or government of New *388 York City violates this constitutional provision unless enacted upon a home rule message from the City.
Chapter 13 of the Laws of 1996 is entitled "[a]n act to amend the civil service law in relation to providing jurisdiction to [PERB] to enter disputes which reach an impasse in the course of collective negotiations between the public employer and the New York city police.” Section 1 states further:
"Notwithstanding any other provision of law to the contrary, the public employment relations board may invoke procedures to be followed in the event of disputes which reach an impasse in the course of collective negotiations between the public employer and the New York city police” (L 1996, ch 13, § 1).
Section 2 amends Civil Service Law § 209 to remove the exemption of the New York City police and fire department members from PERB’s binding arbitration impasse procedures.
Although chapter 13 did not amend Civil Service Law § 212 in so many words, manifestly the act’s expressly stated purpose — to provide PERB with jurisdiction over the impasse arbitration procedures previously vested in the City’s BCB— can only be achieved if section 1 creates an exception for "negotiations between the public employer and the New York city police” with respect to the statutory authority of all other local governments, under Civil Service Law § 212, to completely opt out of PERB’s jurisdiction over impasse procedures. That is, under section 1 of chapter 13, "notwithstanding” the existence of BCB jurisdiction over impasses between the City and its employees’ bargaining representatives (because of the City’s enactment by local law of its mini-PERB and local procedures), an impasse between the City and the PBA would be governed by Civil Service Law § 209 and PERB.
It would, thus, appear to be indisputable that chapter 13, an act "in relation to * * * collective negotiations between the [City] and the New York city police,” is a special law because it applies only to New York City (see, NY Const, art IX, § 3 [d] [4] [defining "special law” as "(a) law which in terms and in effect applies to one or more, but not all * * * cities”]; City of New York v State of New York, 76 NY2d 479; Matter of Town of Islip v Cuomo, 64 NY2d 50, 52; cf., City of Amsterdam v Helsby, 37 NY2d 19, 27 [amendment to Civil Service Law § 209 providing for binding arbitration when an impasse is reached between public employer and public safety employees is a general law because it applies to all public employers]). By virtue *389 of chapter 13, only New York City, among all units of local government throughout the State, is prohibited from providing for a local public employment relations board with jurisdiction over binding arbitration procedures when an impasse is reached in negotiations with its police force.[3]
Moreover, the proposition that chapter 13 relates to the "property, affairs or government” of New York City cannot be seriously contested, as it regulates the bargaining process between the City and its police department members and thus relates to the terms and conditions of employment of this local public safety force (see, Matter of Osborn v Cohen, 272 NY 55 [personnel structure and hours of employment of City’s fire department is a matter of local, concern]).
Thus, there is little question but that chapter 13 of the Laws of 1996 is a special law relating to New York City triggering the home rule procedural requirements of the Constitution. We have, however, recognized an exception to those requirements if "the subject matter of the statute is of sufficient importance to the State generally to render it a proper subject of State legislation” (Matter of Kelley v McGee, 57 NY2d, at 538, supra).
The PBA argues that the State interest exception applies here and that the general presumption of constitutionality that attaches to legislative enactments (see, City of New York v State of New York, 76 NY2d, at 485, 487, supra; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370) requires application of the "any conceivable legitimate objective” standard applicable under minimal scrutiny equal protection rational basis analysis (see, Maresca v Cuomo, 64 NY2d 242, 251 [when applying the equal protection rational basis test "a court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack”], appeal dismissed 474 US 802). We disagree.
First, the equal protection rational basis standard, applied generally to attacks on State social or economic regulation and which validates measures reasonably related to any conceivable legitimate State interest, is not an appropriate analogy to the sensitive balancing of State and local interests required in *390 resolving home rule issues under our State Constitution. As is the case when the rational basis standard is applied to constitutional litigation in the equal protection context, judging the constitutionality of special State local legislation will almost invariably result in upholding the statute over home rule objections, if it is sufficient for its validity that the law merely bears some relationship to some conceivable State interest.[4]
In recognition of the competing constitutional values involved when State legislation impinges on and overlaps with local concerns and that, therefore, a more substantive nexus should be required if home rule is to remain a vital principle of fundamental law, Chief Judge Cardozo framed the issue as follows:
"The question to be faced is this, has the State surrendered the power to enact local laws by the usual forms of legislation where subjects of State concern are directly and substantially involved, though intermingled with these, and perhaps identical with them, are concerns proper to the city?” (Adler v Deegan, 251 NY 467, 489-490 [concurring opn] [emphasis supplied], rearg denied 252 NY 574, remittitur amended by 252 NY 615.)
The Court in Adler answered that question in the negative, rejecting the views of the dissenting Judges that would have even more restrictively limited the authority of the State to legislate in relation to local matters. The standard which has been accepted as appropriately balancing State and local interests was first formulated by Chief Judge Cardozo in his concurring opinion in Adler v Deegan (supra):
"The test is rather this, that, if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality” (251 NY, at 491 [emphasis supplied]).
Thus, where State concern is involved "to a substantial degree, in depth or extent,” the State may freely legislate notwithstanding the legislation’s impact on local concerns (Wambat Realty *391 Corp. v State of New York, 41 NY2d 490, 494 [emphasis supplied]).
Therefore, for the State to enact a special law on local affairs without complying with home rule requirements, its interest in the subject matter must be substantial. Moreover, and as a corollary to the constitutional balancing of overlapping local and State interests requiring that the "subjects of State concern [must be] directly and substantially involved” (Adler v Deegan, supra, 251 NY, at 490 [Cardozo, Ch. J., concurring] [emphasis supplied]), the enactment must bear a reasonable relationship to the legitimate, accompanying substantial State concern. Otherwise, "[interference in such a degree would be intrusion upon a concern or interest of the city without a compensating offset in the advancement of a concern or interest of the [SJtate” (Adler v Deegan, supra, at 486 [Cardozo, Ch. J., concurring] [emphasis supplied]). Thus, State legislation impacting especially on a locality is only valid if "it can be stated that the statutes in question 'serve a supervening State concern’ ” (Town of Monroe v Carey, 96 Misc 2d 238, 242 [emphasis supplied] [quoting Wambat Realty Corp. v State of New York, 41 NY2d, at 495, supra], affd on opn at Sup Ct 46 NY2d 847), and "relate to life, health, and the quality of life [of the People of the State]” (Wambat Realty Corp. v State of New York, supra, 41 NY2d, at 495 [emphasis supplied]).
Finally, the substantial State concern which will be permitted to trump constitutional home rule requirements regarding a particular enactment cannot be derived, as the PBA suggests, purely from speculative assertions on possible State-wide implications of the subject matter, having no support in the language, structure or legislative history of the statute. Again, it would be absolutely inconsistent with the sensitive balancing of State and local interests that has been our tradition in home rule litigation to allow the State to justify legislation inimical to the constitutional values of the home rule article based purely on considerations having no apparent role in its enactment, no matter how plausibly conceived as an afterthought. Thus, in Matter of Osborn v Cohen (272 NY 55, supra), the legislation at issue directed a New York City referendum on regulating the hours and shifts of City firefighters. Supreme Court had upheld the constitutionality of the statute on the ground that restricting working hours of firefighters would increase their efficiency and thereby enhance the safety and health of the City’s large population of residents and transients — matters already identified as legitimate subjects of *392 State concern. This Court in Osborn rejected that rationale "so drily logical drawn from asserted facts without foundation in the record” (272 NY, at 59, supra [emphasis supplied]). To the contrary, our precedents have consistently relied upon the stated purpose and legislative history of the act in question to find, or reject, a substantial State concern (see, e.g., Matter of Town of Islip v Cuomo, 64 NY2d, at 53-54, supra; Matter of Kelley v McGee, 57 NY2d, at 539, supra; Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d, at 369, 374, supra; Matter of Radich v Council of City of Lackawanna, 93 AD2d 559, 566, affd 61 NY2d 652; Town of Monroe v Carey, 96 Misc 2d, at 241, supra).
Assessing chapter 13 of the Laws of 1996 by the foregoing criteria, we come to the same conclusion as Supreme Court and the Appellate Division, that this legislation cannot be upheld under any substantial State interest exception to the requirements of article IX, § 2 of the Constitution. Since chapter 13 itself does not expressly identify any State concern motivating its enactment, we turn to its legislative history. Contrary to the PBA’s assertions on appeal, the legislative history of chapter 13 simply does not evidence that the Legislature enacted it out of serious public safety concerns. Rather, the legislative record discloses that the reason for chapter 13’s introduction and passage most consistently and unequivocally expressed was to create State-wide uniformity with respect to impasse procedures available to police department members under Civil Service Law § 209, the lack of uniformity under then existing law being described as "a glaring inequity” (Sponsor’s Mem to L 1996, ch 13; see, Assembly Debate on Assembly Bill A 8482/S 5779, Jan. 24, 1996, at 13, 47, 50, 72 [statements of Assembly Sponsor Crowley, and Members Weisenberg and Becker]; Senate Debate on Senate Bill S 5779, Jan. 24, 1996, at 563 [statement of Senate Sponsor Trunzo]; Assembly Debate on Vote to Override Governor’s Veto of Senate Bill S 5779, Feb. 12, 1996, at 79 [statement of Assemblymember Weisenberg]; Senate Debate on Vote to Override Governor’s Veto of Senate Bill S 5779, Feb. 12, 1996, at 1220-1221, 1222 [statements of Senators Waldon and Oppenheimer]).
The Legislature was also prompted by the belief that the binding arbitration procedures of Civil Service Law § 209 under PERB’s neutral jurisdiction would provide a fairer forum for the New York City police than the more parochial, existing local impasses procedures (see, e.g., Sponsor’s Mem, op. cit.; Assembly Debate, Jan. 24, 1996, op. cit, at 14, 22, 36, 51 [state *393 ments of Assembly Sponsors Crowley and Vitaliano and Member Lopez]; Assembly Debate, Feb. 12, 1996, op. cit., at 80 [statement of Assemblymember Townsend]). There were also expressions in the debate by some individual members of the Legislature that Civil Service Law § 209’s procedures would likely result in greater parity between the salaries of New York City police and those in other large metropolitan areas of the State (see, e.g., Senate Debate, Feb. 12, 1996, op. cit., at 1221, 1224 [statements of Senators Waldon and Abate]).
To whatever degree the foregoing set of expressed purposes for enacting chapter 13 might represent matters of legitimate, substantial State concern, the statute bears no reasonable relationship to those goals. The act does not and cannot accomplish the most clearly expressed legislative objective, of achieving State-wide uniformity in impasse arbitration procedures, because all other jurisdictions but the City retain the right under Civil Service Law § 212 to opt out of PERB’s impasse procedures by creating local mini-PERBs and, indeed, many large metropolitan units of local government have chosen that alternative. Thus, rather than creating an impasse arbitration procedure uniformly available to all police State-wide, chapter 13 singles out the New York City police for different treatment.
. To the extent that the legislative purpose in enacting chapter 13 was based on the assumptions that fairer, more economically favorable procedures would be achieved by replacing the City’s local mini-PERB with the State Board, resulting in the elimination of salary disparities with other metropolitan police departments, these assumptions are refuted by the unchallenged substantial equivalency PERB has determined exists with respect to its own impasse arbitration procedures and those used by the other mini-PERB’s created under the authority of Civil Service Law § 212, New York City’s BCB included. In this regard, it is particularly noteworthy that many of the police departments in nearby metropolitan localities cited in the legislative record to demonstrate the disparate salary treatment of New York City police are subject to impasse arbitration procedures supervised by local mini-PERB’s, not the State PERB.
Thus, chapter 13 of the Laws of 1996 does not serve to advance nor is it reasonably related to the professed State concerns which prompted its enactment. It follows that the constitutional infirmity of this special law unquestionably "related] to the property, affairs or government” (NY Const, art *394 IX, § 2 [b] [2]) of New York City, for which no home rule message was ever sent, cannot be cured under the substantial State interest exception.
Nor can we accept the PBA’s alternative argument that we should strike down as unconstitutional only section 1 of chapter 13 and leave standing section 2, which does no more than remove the specific exemption for New York City police and fire department members from the impasse procedures of Civil Service Law § 209 if and when applicable. In the absence of evidence that the Legislature would have intended that section 2’s amendment of Civil Service Law § 209 remain effective if the primary purpose of the act — to provide PERB with jurisdiction over an impasse between the City and its police force— could not be given effect, there is no basis to sever chapter 13 and uphold section 2 (see, Association of Surrogates & Supreme Ct. Reporters v State of New York, 79 NY2d 39, 47-48 [quoting People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 60, rearg denied 231 NY 516, cert denied sub nom. State Tax Commr. v People ex rel. Alpha Portland Cement Co., 256 US 702]).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
Order affirmed, with costs.

. While the arbitrators supervised by PERB may issue a determination effective for no more than two years, the effect of the recommendation of the BCB’s impasse panel is not limited to a two-year period (compare, Civil Service Law § 209 [4] [c] [vi], with Administrative Code § 12-311). Additionally, under Civil Service Law § 209, the arbitrators’ determination is subject only to limited judicial review (Civil Service Law § 209 [4] [c] [vii]), while the BCB may review the merits of the impasse panel’s recommendation upon appeal of either party (Administrative Code § 12-311 [c] [4] [c]).

. With the exception of New York City, the Legislature may also enact a special law relating to the locality’s property, affairs or government on a message of necessity from the Governor in which two thirds of the members of each house concur (NY Const, art IX, § 2 [b] [2]).

. The parties do not dispute Supreme Court’s judicial notice that, in addition to New York City, the Counties of Nassau, Suffolk and Westchester, and the Town of Hempstead and the Syracuse City School District have also opted to create their own mini-PERBs under Civil Service Law § 212.

. Constitutional scholar Laurence H. Tribe characterizes the rational basis level of equal protection scrutiny as an exercise of "remarkable deference” and "largely toothless” judicial review (Tribe, American Constitutional Law, at 1443, 1601 [2d ed]).