*382 OPINION OF THE COURT
Smith, J.
In this declaratory judgment action arising from an ongoing collective bargaining dispute between the Patrolmen’s Benevolent Association of the City of New York (PBA) and the City of New York (City), the primary issue presented is whether chapter 641 of the Laws of 1998, which amended the Public Employees’ Fair Employment Act (Civil Service Law § 200 et seq. [Taylor Law]), violates the home rule provisions of the State Constitution (NY Const, art IX, § 2). If chapter 641 is constitutional, a related issue is which agency, the State Public Employment Relations Board (PERB) or the City Board of Collective Bargaining (BCB), has jurisdiction to determine the scope of mandatory collective bargaining in negotiations between the City and the PBA.
 We hold that because chapter 641 is a “special law” that serves a substantial State concern, the home rule requirements were not implicated and thus the statute is constitutional and enforceable even absent a home rule message. We further hold that once a police or fire union opts to seek impasse resolution by PERB and PERB declares an impasse, chapter 641 gives PERB exclusive jurisdiction to resolve such an impasse.
An overview of the statutory framework is necessary to a complete understanding of the issues involved. The Taylor Law is a State-wide comprehensive scheme for regulating relationships between public employers and public employees at all levels of government. With the enactment of the Taylor Law, the Legislature created PERB, an independent board empowered to resolve employment disputes between public employers and the collective bargaining representatives of public employees (Civil Service Law § 205). PERB was authorized to determine when impasse had been reached and to render assistance in resolving the impasse (Civil Service Law § 209). The Taylor Law includes a “local option” that permits local governments to enact their own procedures and to establish their own impartial administrative bodies to replace designated portions of the Taylor Law and their administration by PERB (Civil Service Law § 212). Such local collective bargaining laws *383 are required to be substantially equivalent to the provisions and procedures applicable to the State set forth in the Taylor Law. These administrative bodies, one of which is the BCB, are the local equivalent of PERB and are commonly referred to as “mini-PERBs.”
Section 212 of the Civil Service Law draws an express distinction between the City and all other local governments. Other than the City, local governments that wish to establish a local administrative body and enact local procedures must apply to PERB for determination that their procedures are substantially equivalent to those set forth in the Taylor Law. Exempt from this requirement, the City’s procedures and provisions of local law need not be submitted to PERB for approval and are deemed effective unless adjudged otherwise in an action brought by PERB (Civil Service Law § 212; City of New York v Patrolmen’s Benevolent Assn., 89 NY2d 380, 386 [1996] [City v PBA]). Since the enactment in 1967 of the New York City Collective Bargaining Law (Administrative Code of City of NY, tit 12, ch 3, § 12-301 et seq. [NYCCBL]), and section 1171 of the New York City Charter, which created the BCB, PERB has not sought a judicial declaration that the City law is not substantially equivalent to the Taylor Law (see, City v PBA, supra, 89 NY2d at, 386).
In 1974, the Legislature amended the Taylor Law to provide compulsory binding arbitration for resolving impasses in bargaining disputes involving police and fire unions not subject to the authority of a mini-PERB (L 1974, chs 724, 725, amending Civil Service Law § 209). The amendment provided that either party could invoke the assistance of PERB when it believed an impasse had been reached. The City was specifically exempted from this requirement in recognition of its preexisting impasse arbitration procedures (see, NYCCBL former § 1173-7.0 [c], now recodified as § 12-311 [c]; City v PBA, supra, at 385-386), which were supervised by the BCB and available for all categories of employees who reached an impasse in collective negotiations with the City.
Through the enactment of chapter 13 of the Laws of 1996, the State Legislature attempted to transfer to PERB jurisdiction over impasse negotiations for the City police and fire unions. In City v PBA, we ruled that chapter 13 violated home rule principles, because it constituted a special law affecting the “property, affairs or government” of the City and did not implicate a substantial State-wide concern. The Legislature sought to cure the defect in the current statute, chapter 641 of *384 the Laws of 1998, which allows police and fire unions in any municipality with a local impasse resolution system to take their collective bargaining disputes to PERB. Chapter 641 was enacted when only four localities — the City, Nassau, Suffolk and Westchester counties — had existing impasse resolution procedures. Thus, unless the police or fire unions in these four localities opted to use the mini-PERBs, conflicts with the local employer would be resolved by PERB according to the impasse procedures of Civil Service Law § 209.
The most recent collective bargaining agreement between the City and the PBA expired July 31, 2000, the first agreement between the parties to expire since the enactment of chapter 641. During negotiations, the City filed a scope of bargaining petition with the BCB alleging that some of PBA’s bargaining demands were not mandatory subjects of bargaining. The challenged demands related mainly to officer discipline and scheduling. The PBA responded by filing a limited answer, claiming that BCB did not have jurisdiction over scope of bargaining, but rather PERB had the final say over whether a subject was within the scope of mandatory bargaining.
PBA next filed a declaration of impasse and a declaratory ruling petition with PERB, seeking to trigger PERB’s impasse resolution procedures under Civil Service Law § 209 (4) and to obtain from PERB a determination on whether the subjects of the parties’ bargaining dispute were within the scope of mandatory negotiations. The City filed an improper practice, charge with BCB, alleging that the PBA had not engaged in good faith bargaining. Next, the City and the PBA each filed declaratory judgment actions. The PBA sought both a declaration that PERB has exclusive jurisdiction to resolve disputes between it and the City concerning scope of negotiations and the existence of an impasse, and an order directing the BCB to dismiss the City’s petition. The City sought judgment declaring that chapter 641 is unconstitutional and that BCB has exclusive jurisdiction over collective bargaining impasses and scope of bargaining issues, whether or not the issue arose within the context of an impasse.
The actions were consolidated, with venue placed in Albany County. Thereafter, the City and the PBA each moved for summary judgment. Supreme Court granted the PBA’s motion, upholding the constitutionality of the statute. The Appellate Division affirmed, finding that chapter 641 is not a special law subject to home rule requirements, but rather is a general law *385 of State-wide application because it “uniformly prohibit [s] every local government from unilaterally preventing its police and fire unions from utilizing PERB.” (285 AD2d 52, 56.) The Appellate Division also affirmed Supreme Court’s finding that PERB has exclusive jurisdiction over scope of bargaining disputes between PBA and the City. The City appeals as of right on constitutional grounds, and BCB appeals pursuant to leave granted by this Court. We now modify.
The primary issue on appeal is the effect that chapter 641 of the Laws of 1998 has upon the statutory framework for public sector collective bargaining in New York. The City argues that chapter 641 is a special law violating home rule mandates “in that it singles out the City of New York and its three neighboring counties by establishing a new system for them totally at odds with the rest of the State.” Relying on City v PBA, where chapter 13 of Laws of 1996 was found violative of the home rule provisions of the Constitution, the City argues that the Legislature’s subsequent attempt to transfer impasse jurisdiction of collective bargaining disputes between the City and its police force from BCB to PERB through its enactment of chapter 641 is similarly infirm because, like chapter 13, it targets New York City to deprive it and the three other localities of their right to use a mini-PERB for impasse resolution. The City’s reliance on City v PBA is misplaced.
Article IX, § 2 of the State Constitution grants the Legislature authority to enact a “general law” relating to the property, affairs or government of local governments (NY Const, art IX, § 2 [b] [2]). A general law is defined as a “law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages” (NY Const, art IX, § 3 [d] [1]). In contrast, a “special law” is defined as a “law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages” (NY Const, art IX, § 3 [d] [4]). Article IX further provides that a special law relating to the property, affairs or government of any local government may not be enacted without a “home rule message” from the locality or the localities affected by the law (NY Const, art IX, § 2 [b] [2]). A home rule message is a “request of two-thirds of the total membership of [the local] legislative body or * * * [a] request of its chief executive officer concurred in by a majority of such membership” (id.).
Thus, as we stated in City v PBA, “the State Constitution grants significant autonomy to local governments to act with *386 respect to local matters. Correspondingly, it limits the authority of the State Legislature to intrude in local affairs” by requiring it to act through general or special laws (89 NY2d, at 387). A recognized exception to the home rule message requirement exists when a special law serves a substantial State concern (id., at 389; see also, Matter of Kelley v McGee, 57 NY2d 522, 538 [1982]). To overcome the infirmity of enacting a special law without complying with home rule requirements, the enactment must have a reasonable relationship to an accompanying substantial State concern (City v PBA, supra, at 391). Thus, a special law that relates to the property, affairs or government of a locality is constitutional only if enacted upon a home rule message or the provision bears a direct and reasonable relationship to a “substantial State concern” (id., at 393).
The preamble to chapter 641 describes the statute, in pertinent part, as “[a]n Act to amend the civil service law, in relation to extending the applicability provisions establishing dispute resolution during collective negotiations to include the entire state.” The Legislature found and declared that “the local option provided in section 212 of the civil service law is not sufficient to fulfill the purposes of the public employees’ fair employment act when applied to resolving disputes between local governments and police and fire bargaining units” (L 1998, ch 641, § 1). Section 2 of the law further amends Civil Service Law § 212 by adding a new subdivision (3) which specifically provides:
“Notwithstanding any other provisions of law to the contrary, the resolution of disputes in the course of collective negotiations as provided by section two hundred nine of this article shall apply to any organized fire department, police force, or police department of any government subject to * * * this section. Provided, however, that a recognized or certified employee organization may elect to continue dispute resolution procedures which existed on the day prior to the effective date of this subdivision by notifying the appropriate public employment relations board in writing” (L 1998, ch 641, § 2).
Like chapter 13 enacted before it, there can be no serious contention that chapter 641 does not relate to “property, affairs or government” as it regulates the collective bargaining process between local governments and their public police and fire *387 unions and, thus, “relates to the terms and conditions of employment of * * * local public safety’ (City v PBA, supra, at 389). Also like chapter 13, chapter 641 amends the Taylor Law to remove the exemption in Civil Service Law § 209 that prohibited New York City police and fire unions access to PERB’s binding arbitration impasse procedures.
The statutes are significantly different, however, in that unlike chapter 13, which targeted only New York City, chapter 641 amends the local option provision that permitted all local governments to prohibit their police and fire unions from utilizing PERB’s impasse resolution procedures through creation of their own mini-PERB. The newly amended Taylor Law now provides that all collective bargaining impasses reached between local governments and their police and fire unions are resolved by PERB. In recognition that certain localities had established different dispute resolution procedures prior to the enactment of chapter 641, the statute affords these unions the option to continue using an existing mini-PERB in effect before the effective date of the legislation.
We agree with the courts below that by its terms, chapter 641 applies to all local governments in that none are permitted to require their police or fire unions to forego access to PERB and instead utilize a mini-PERB established by the locality. However, only New York City and three surrounding suburbs had an established mini-PERB governing impasse proceedings. No other localities can be added to these four. Consequently, the actual effect of chapter 641 is a restriction targeted at these four localities that continued to exercise the preexisting local option that permitted the creation of mini-PERBs to address collective bargaining impasses (see, Matter of Holland v Bankson, 290 NY 267, 271 [1943] [where a statute contained a grandfather clause providing that the local laws of 14 localities were not repealed because they were enacted before the effective date of the statute, this Court held that the State statute “was clearly never intended to be a general law applicable alike to all cities”]). Moreover, the fact that chapter 641’s prescriptions are directed to at least one of the four localities, New York City, instead of the entire State, finds support in the preamble which describes the statute, in part, as “[a]n Act * * * providing jurisdiction to the public employment relations board [PERB] to enter disputes which reach an impasse in the course of collective negotiations between the public employer and the New York city police” (L 1998, ch 641).
We conclude that chapter 641 is a special law, but notwithstanding, the home rule procedural requirements were not *388 triggered here because the statute was enacted in furtherance of and bears a reasonable relationship to a substantial Statewide concern (see, City v PBA, supra, 89 NY2d, at 391; Matter of Kelley v McGee, supra, 57 NY2d, at 538). The substantial State concern supporting the enactment of chapter 641 is expressed in section 1 of the statute: it is to foster “orderly resolution of collective bargaining disputes involving police and fire bargaining units * * * to enhance public safety and prevent the loss or interruption of vital public services” (L 1998, ch 641, § 1).* In determining a substantial State concern, we “rel[y] upon the stated purpose and legislative history of the act in question” (City v PBA, supra, 89 NY2d, at 392), and as Supreme Court aptly noted, the “wisdom of that determination is not for court review here.” (188 Misc 2d 146, 152.) Further, fulfillment of this legislative purpose is rationally served by chapter 641, which mandates that all local governments allow their police and fire unions access to PERB impasse procedures in resolving public sector labor disputes.
This conclusion is not at odds with City v PBA, in which we held that chapter 13 of the Laws of 1996 was unconstitutional because it was not enacted in compliance with the home rule requirements of the State Constitution and could not be upheld under any substantial State interest exception. Chapter 13 prohibited only New York City, among all other units of local government throughout the State, from providing for a mini-PERB with jurisdiction over binding arbitration procedures when an impasse was reached in negotiations with its police force (89 NY2d, at 388-389).
In the absence of an expressly identified State concern, this Court turned to legislative history to identify reasons for enacting chapter 13, which include the achievement of State-wide uniformity with respect to impasse procedures available to police department members under Civil Service Law § 209, the belief that the binding arbitration procedures of Civil Service Law § 209 under PERB’s neutral jurisdiction would provide a fairer forum for the New York City police than local impasse *389 procedures, and achievement of greater parity between the salaries of New York City police and those in other large metropolitan areas of the State (id., at 392-393). Without passing on whether these purposes were matters of substantial State concern, we concluded that chapter 13 was not sufficiently related to those legislative purposes because it isolated New York for different treatment and thus failed in its goal to achieve uniformity in the Taylor Law’s treatment of police (id., at 393). Chapter 641 corrects the infirmities of its predecessor statute by not targeting one locality and uniformly applying to all local governments, by expressly stating the substantial State concern sought to be addressed and by ensuring that the legislation is rationally related to that concern.
Having found chapter 641 constitutional, we now turn to the statutory construction issue raised by the parties on appeal and address whether PERB or BCB maintains scope of bargaining jurisdiction after a declaration of impasse is filed with PERB by a police or fire union. The City and the BCB argue that impasse and scope of bargaining proceedings are distinguishable and contend that the Appellate Division erred when it equated PERB’s power to determine whether an impasse exists in collective bargaining negotiations as to conditions of employment, with the power to determine whether particular demands or contract provisions are within the scope of mandatory bargaining. They contend that New York City Collective Bargaining Law § 12-309 expressly provides that BCB continues to possess statutory jurisdiction to determine scope of bargaining petitions.
The PBA urges that the Taylor Law, as amended by chapter 641, provides PERB with exclusive jurisdiction over impasse resolution and scope of bargaining disputes between the PBA and the City. PBA contends that the only way BCB would have jurisdiction over scope of bargaining would be if scope of bargaining'falls within the BCB’s improper practice jurisdiction under Civil Service Law § 205 (5) (d). PBA argues that following the enactment of chapter 641, PERB acquired exclusive jurisdiction over all scope of bargaining determinations as part of its impasse resolution jurisdiction. PERB argues that it has exclusive jurisdiction over impasse resolution and that its jurisdiction has always encompassed the power to resolve scope questions, where necessary.
We conclude that under the present statutory scheme, once a police or fire union pursues impasse resolution assistance from PERB and PERB declares an impasse, it has juris *390 diction over scope of bargaining issues between PBA and the City, to the extent necessary for PERB to exercise its exclusive jurisdiction to resolve impasses. Until such time, BCB retains jurisdiction to determine scope of bargaining outside of the impasse context. We decline to adopt the Appellate Division’s proposition that “PERB has exclusive jurisdiction over scope of bargaining disputes between PBA and the City.” (285 AD2d, at 57.)
The duty to bargain exists only as to mandatory subjects, which are defined by law, and in the absence of an agreement, only mandatory subjects can be submitted to an impasse panel. It is true that an express statement of BCB’s jurisdiction to determine scope of bargaining issues is provided in New York City Collective Bargaining Law, which states that “the board of collective bargaining * * * shall have the power and duty * * * to make a final determination as to whether a matter is within the scope of collective bargaining” (§ 12-309 [a] [2]). This provision dates back to the original enactment of the law in 1967 (NYCCBL § 1173-5.0 [a] [2], now recodified as § 12-309 [a] [2]) and was in effect when chapter 641 was enacted. Despite that language, section 2 of chapter 641, codified as the new subdivision (3) of the Civil Service Law § 212, provides in relevant part that notwithstanding other provisions of law to the contrary, the resolution of disputes in the course of collective bargaining negotiations as provided by Civil Service Law § 209 shall apply to any organized fire or police department. Subdivision (4) of Civil Service Law § 209 further provides that PERB shall render assistance when it “determines that an impasse exists in collective negotiations between [an] employee organization and a public employer as to the conditions of employment.” Thus, in order to determine whether an impasse exists as to “conditions of employment,” PERB must be authorized to determine what qualifies as a proper condition of employment because if the impasse does not relaté to a condition of employment, PERB has no authority to render assistance. The lower courts concluded that the term “conditions of employment,” loosely defined to include “salaries, wages, [and] hours” (Civil Service Law § 201 [4]), is the equivalent of the phrase “scope of bargaining” as it is used in the Administrative Code, and that chapter 641 therefore grants to PERB exclusive scope of bargaining jurisdiction.
While we do not disturb the conclusion that PERB has scope of bargaining jurisdiction to the extent necessary to exercise its impasse resolution jurisdiction, chapter 641 does not divest
*391 BCB of all authority to determine scope of bargaining issues arising from collective negotiations between the City and police and fire unions (see, Matter of Town of Brookhaven v New York State Bd. of Equalization & Assessment, 88 NY2d 354 [1996]). Notably, the Legislature did not amend Civil Service Law § 205 (5) (d), which authorizes BCB to exercise jurisdiction over improper practice charges, including a charge that a party is refusing to negotiate in good faith concerning terms and conditions of employment — a dispute which would require BCB to determine scope of bargaining issues. Because chapter 641 did not amend Civil Service Law § 205 (5) (d) or alter BCB’s improper practice jurisdiction thereunder, BCB retains jurisdiction to decide whether an issue constitutes a mandatory subject of bargaining in the context of an improper practice proceeding.
The lower courts found that if BCB were to retain all of its scope of bargaining jurisdiction, it would create the “absurdity” of having “two separate agencies on two different levels of government attempting to separately resolve the intertwined issues of scope of bargaining and impasse resolution.” (285 AD2d, at 57; 188 Misc 2d, at 153.) We do not have conflicting rulings on the scope of bargaining that concretize this “absurdity” before us. While the problem of such rulings remains hypothetical, we decline to find PERB vested with “exclusive jurisdiction” over scope of bargaining issues. Chapter 641 and the Taylor Law generally plainly evince the intention to equip PERB with all the powers it needs to resolve impasses but not to otherwise disturb BCB’s improper practice jurisdiction (see, Mem of Michael R. Cuevas, Chairman of PERB, Bill Jacket, L 1998, ch 641 [stating that PERB understood that the bill would not disturb BCB’s general jurisdiction “including all proceedings ancillary to the mediation/arbitration, e.g., improper practice proceedings”]). Thus, because we find that chapter 641 authorizes PERB to determine scope of bargaining in the context of impasse proceedings (without divesting BCB of its jurisdiction until PERB has declared an impasse), we conclude that the Legislature has accorded both agencies jurisdiction over scope of bargaining in negotiations between the PBA and the City. To the extent that this construction may result in venue shopping and concomitant delays, such consequences can only be rectified by the Legislature.
Accordingly, the order of the Appellate Division should be modified, without costs, by declaring that chapter 641 is constitutionally valid as a special law because it serves a *392 substantial State concern, that PERB has jurisdiction over scope of bargaining issues necessary to impasse determination when a New York City police or fire union opts to utilize PERB’s impasse resolution procedures, and that it does not otherwise divest the Board of Collective Bargaining of the City of New York of scope of bargaining jurisdiction, and as so modified, affirmed.
Chief Judge Kaye and Judges Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur.
Order modified, without costs, by declaring in accordance with the opinion herein and, as so modified, affirmed.

 Other areas in which this Court has found sufficient State-wide importance include State legislation concerning the public health and safety of the people of the City of New York, payment by the City of New York of its mandatory retirement or pension liabilities, the protection of the resources of the Adirondack Park region, the preservation of financially troubled cultural institutions and museums of the State, and the residential mobility of members of the civil service (see, Matter of Kelley v McGee, supra, 57 NY2d, at 538 [citations omitted]).