Formal Opinion No. 2011-F1 Robert A. Kent General Counsel New York State Office of Alcoholism Substance Abuse Services
John V. Tauriello Deputy Commissioner Counsel New York State Office of Mental Health
Kerry A. Delaney Deputy Commissioner Counsel New York State Office of
Mental Retardation Developmental Disabilities New York State Department of Mental Hygiene Inter-Office Coordinating Council
1450 Western Avenue Albany, NY 12203
Dear Messrs. Kent and Tauriello and Ms. Delaney:
You have requested an opinion concerning the authority of a non-charter county to change the method of appointing a local director of community services established by the Mental Hygiene Law. You represent the several state offices that, taken together, comprise the Department of Mental Hygiene. Mental Hygiene Law § 5.01. Your responsibilities include the development of statewide comprehensive plans for the provision of state and local services for the mentally ill, the mentally retarded and developmentally disabled, and those suffering from alcoholism and substance abuse.Id. § 5.07(b)(1).
Your offices have regulatory jurisdiction over Article 41 of the Mental Hygiene Law. The purpose of Article 41 is to encourage cooperation between state and local government entities in providing local and unified preventive, rehabilitative, and treatment services to these *Page 2 
populations. Id. § 41.01. In addition, the statute provides for state financial aid to counties to support provision of these services. In order to be eligible for this state aid, each county must establish a local governmental unit (LGU) that is vested with responsibility for the provision of services for mentally disabled persons (e.g., a county mental health department). Mental Hygiene Law § 41.03(1), (3); id. § 41.05(a), (e).[1] The LGUs must develop local comprehensive plans from which the offices you represent develop the statewide plans. Id. § 5.07(b).
The LGUs have other responsibilities, including making policy for and exercising general supervisory authority over or administering local services and facilities provided by or supervised by it, Mental Hygiene Law § 41.13(8); furthering programs for special education and training,id. § 41.13(9); serving as a center for the promotion of community and public understanding of mental disabilities and of the services necessary for their care and treatment, id. § 41.13(11); and identifying and planning for the provision of care coordination and emergency services for high-need patients under Kendra's Law,id. § 41.13(16).
An LGU is governed by a community services board,id. § 41.05(b), and a chief executive officer, the local director of community services. Id. §§ 41.03(8), 41.05(c). The policy-making functions of the LGU vest in the board, except that a "charter government" may choose to vest all or some of the policy-making authority in the local director. Id. § 41.05(c). A charter government is defined as either New York City or any county with a charter under article IX of the New York Constitution and the Municipal Home Rule Law. Id. § 41.03(2).
Members of the community services board are appointed by the county or, in the case of New York City, by the mayor. Mental Hygiene Law § 41.11(a), (b). The director is appointed by the board, except that a charter county may provide a different mechanism for appointing and removing the director:
 Charter governments may provide for appointment and removal of directors in a manner authorized by such governments. In all other local governments, the board shall appoint and remove the director.
Id. § 41.09(a). The director's salary and expenses are set by the appointing authority. Id.
You have explained that a non-charter county has adopted a local law authorizing the county legislature, rather than the community services board as required by Mental Hygiene Law § 41.09(a), to appoint the director of community services. Another non-charter county is considering such local legislation. You believe Mental Hygiene Law § 41.09(a) relates to a substantial state concern and thus cannot be superseded by a non-charter county's local law. As explained more fully below, we believe your interpretation of this statute is reasonable and rational and thus concur with it. *Page 3 
I. Legislative History and Purpose
Community services boards were first authorized in 1954, and from the beginning a board's members appointed the director of the board, who served as the board's chief executive officer. See Act of Feb. 12, 1954, ch. 10, § 1, 1954 N.Y. Laws 22, 24-25. As originally enacted, no distinction was made between charter counties and non-charter counties.
In 1972, the Mental Hygiene Law was recodified, and the community services provisions first distinguished between the authority of charter governments and non-charter governments, adopting the language present today. See Act of May 9, 1972, ch. 251, §§ 11.05(c) (where policy-making functions could be vested), 11.09(a) (entity authorized to appoint and remove director), 1972 McKinney's N.Y. Laws 468, 484. These provisions were explained as follows:
 The recodification recognizes existing practice which permits local governments which have adopted a charter form of government to have a Department of Mental Health with an advisory board. The bill requires a board in every local governmental unit but in charter forms of government the local government has the option of making such a board advisory rather than executive. In such case, the Director of Community Services may be appointed in the manner authorized by such governments. In local governments which have not adopted a charter form of government, the board appoints the director.
Memorandum of Joint Legislative Committee on Mental and Physical Handicap (March 19, 1971), reprinted in Bill Jacket for ch. 251 (1972), at 11.
Although renumbered, the language of former sections 11.05(c) and 11.09(a) B now sections 41.05(c) and 41.09(a) B has not changed since it was enacted in 1972.
The Legislature explained the purposes to be served by article 41:
 This article is designed to enable and encourage local governments to develop in the community preventive, rehabilitative, and treatment services offering continuity of care; to improve and to expand existing community programs for the mentally ill, the mentally retarded and the developmentally disabled, and those suffering from the diseases of alcoholism and substance abuse; to plan for the integration of community and state services and facilities for the mentally disabled; and to cooperate with other local governments and with the state in the provision of joint services and sharing of manpower resources. *Page 4 
 In order to further the development, for each community in this state, of a unified system for the delivery of such services, this article gives to a local governmental unit the opportunity to participate in the state-local development of such services by means of a unified services plan. Such a plan is designed to be a mechanism whereby the department, department facilities, and local government can jointly plan for and deliver unified services to meet the needs of the consumers of such services. The unified services system will strengthen state and local partnership in the determination of the need for and the allocation of services and more easily provide for the most effective and economical utilization of new and existing state, local governmental, and private resources to provide services. A uniform ratio of state and local government responsibility for financing services under a unified services plan is established by this article to eliminate having the types of services provided in a community be determined by the local government's share of the cost of a particular program rather than the needs of the community.
 It requires the direction and administration, by each local governmental unit, of a local comprehensive planning process for its geographic area in which all providers of services shall participate and cooperate in the provision of all necessary information. It also initiates a planning effort involving the state, local governments and other providers of service for the purpose of promoting continuity of care through the development of integrated systems of care and treatment for the mentally ill, mentally retarded and developmentally disabled, and for those suffering from the diseases of alcoholism and substance abuse.
Mental Hygiene Law § 41.01.
II. Analysis
Article IX of the Constitution establishes the home rule authority of local governments, including counties. Section 2 of article IX authorizes a local government to adopt local laws relating to its property, affairs, or government as long as those laws are consistent with the provisions of the Constitution and any general law. N.Y. Const. Art. IX, § 2(c)(i). It also authorizes a local government to adopt local laws that relate to certain enumerated subjects, including the mode of selection and removal of its officers and employees, again as long as the local laws are consistent with the Constitution and general laws, and additionally except to the extent that the Legislature restricts the adoption of such a local law relating to other than the local government's property, affairs, or government.Id. § 2(c)(ii)(1). These grants of power are legislatively enacted in section 10 of the Municipal Home Rule Law. Municipal Home *Page 5 
Rule Law § 10(1)(i), (ii)(a). Concomitantly, the state Legislature generally may legislate in relation to a local government's property, affairs, or government only by general law.[2]
When a statute relates to a "substantial state concern," however, the State may freely legislate notwithstanding the legislation's impact on local concerns. City of New York v. Patrolmen's BenevolentAss'n, 89 N.Y.2d 380, 390-91 (1996).
 Home rule simply is not implicated when the Legislature acts in areas "other than the property, affairs or government of a local government" [citing N.Y. Const. Art. IX, § 3(a)(3] . Under the limited meaning of his phrase, legislation of State import does not impinge upon municipal home rule simply because it touches matters that concern the affairs or property of the [local government].
Uniformed Firefighters Ass'n v. City of New York,50 N.Y.2d 85, 90 (1980). Consequently, if the subject matter of a special law is an area of substantial state concern, a local government governed by it cannot supersede it by enacting an inconsistent local law. Matter of Kelley v. McGee, 57 N.Y.2d 522, 539, n. 14 (1982);see Blass v. Cuomo, 168 A.D.2d 54, 57 (2d Dep't 1991);see also Op. Att'y Gen. (Inf.) No. 98-19.
A matter of state concern is one in which the subject matter is in need of legislative attention of sufficient importance to the State that it transcends local or parochial interests or concerns.Wambat Realty Corp. v. State, 41 N.Y.2d 490, 494-95 (1977). Special laws that have been deemed to serve a substantial state interest include those regulating the public health and safety of the people of New York City, Adler v. Deegan, 251 N.Y. 467 (1929), protecting the resources of the Adirondack park region, Wambat RealtyCorp. v. State, 41 N.Y.2d 490 (1977), the residential mobility of members of the civil service, Uniformed Firefighters Ass'n v. City ofNew York, 50 N.Y.2d 85 (1980), salaries of district attorneys as the officers responsible for enforcing state penal laws and representing the State in criminal matters, Matter of Kelley v. McGee,57 N.Y.2d 522 (1982), and the orderly resolution of collective bargaining disputes involving police and fire unions, Patrolmen'sBenevolent Ass'n v. City of New York, 97 N.Y.2d 378 (2001). In contrast, the organization and control of a local fire department,Matter of Osborn v. Cohen, 272 N.Y. 55 (1936), and the method of filling vacancies in the office of county *Page 6 
legislator, Matter of Resnick v. County of Ulster,44 N.Y.2d 279 (1978), have been held to be purely local concerns.
The stated purpose and legislative history of a state statute are relied upon to determine whether a substantial state concern underlies the statute. City of New York v. Patrolmen's Benevolent Ass'n,89 N.Y.2d at 392. The statute must also reasonably relate to that state concern. Id. at 393.
The Legislature enunciated the purposes of article 41 of the Mental Hygiene Law, including the "most effective and economical utilization of new and existing state, local governmental, and private resources to provide [mental hygiene] services," which requires the "direction and administration, by each local governmental unit, of a local comprehensive planning process" for the provision of these services. Mental Hygiene Law § 41.01. We agree with your opinion that this reflects a substantial state concern.
In addition, when viewed in the context of the typical differences between charter and non-charter counties' administrative structure, we believe that section 41.09(a), governing the appointment of a community services director, relates to that state concern. Counties were granted broad authority to adopt charters that set forth the structure of their government, including assigning executive and administrative functions, powers, and duties to officers and agencies, in 1959.[3] Act of Apr. 20, 1959, ch. 569, § 1, 1959 McKinney's N.Y. Laws 708. Typically, county charters provide for an executive or administrator who is independent of the county legislature and who administers the daily functioning of county government. See Local Government Handbook, N.Y. Dep't of State (5th ed. 2008), at 44available at http://www.dos.state.ny.us/lgss/pdfs/Handbook.pdf. The county executive or administrator in charter counties is usually authorized to appoint and remove department heads.[4]Id. at 45. In contrast, in non-charter counties, both legislative and executive powers reside in the board of supervisors, seeid. at 43-44, and the board of supervisors is generally responsible for appointing appointive county officers, see County Law § 400(4)(a) (appointive officers generally); see,e.g., id. § 475(1) (board of supervisors appoints clerk of board of supervisors); id. § 500(1) (board of supervisors appoints county attorney); Highway Law § 100 (board of supervisors appoints county highway superintendent); Arts Cultural Affairs Law § 57.07(1) (board of supervisors appoints county historian).
By designating the community services board as the body in non-charter counties that makes policy with respect to the provision of mental hygiene services in the county, the Mental Hygiene Law grants the exercise of this executive power to the community services board, away from the legislative body. Cf. Memorandum of Joint Legislative Committee on Mental and Physical Handicap (March 19, 1971),reprinted in Bill Jacket for ch. 251 (1972), at 11 (charter *Page 7 
counties may make the community services board an advisory, rather than executive, board). The Legislature then placed the authority to appoint the community services director, the individual responsible for administering and implementing the community services board's policies, with that board. Transferring the authority to appoint the community services director from the community services board to the county legislature, which in non-charter counties has no executive function with respect to the provision of mental hygiene services, would allow the county legislature to, through its appointment, undermine the policy-making authority of the community services board. The community services director would be responsible for implementing the community services board's policies, but also would need to be responsive to the county legislature because his position and his compensation would be determined by it. This would place him in an untenable position of answering to two different bodies with direct oversight of him. Such a conflict on the part of the director would hinder the stated purposes of article 41, including "the most effective and economical utilization of new and existing state, local governmental, and private resources to provide services" and the "direction and administration, by each local governmental unit, of a local comprehensive planning process" for the provision of services within the relevant geographic area. Mental Hygiene Law § 41.01.
Thus, in summary, we agree that the Legislature has enunciated in article 41 a substantial state concern that is served by the mechanism for appointment of the community services director provided in section 41.09(a), and therefore local legislation must be consistent.
Although the Legislature has decided to treat charter and non-charter counties differently under section 41.09(a), such a distinction does not prevent the conclusion that section 41.09(a) relates to a substantial state concern. "Once a statute is found to involve an appropriate level of State interest, the fact that it effects a classification among the local governments it regulates does not render the enactment invalid so long as that classification is reasonable and related to the State's purpose." Matter of Kelley v. McGee,57 N.Y.2d at 540 (citations omitted). As discussed above, we believe that a distinction between charter and non-charter counties in this instance is reasonable, because of the different executive structures found in the two classes of counties. Additionally, the distinction relates to the purposes of article 41, including directing and administering a local planning process for the provision of mental hygiene services within a county and effectively and economically providing those services.
We therefore concur with your conclusion that Mental Hygiene Law § 41.09(a) relates to a substantial state concern, and that a non-charter county may not legislate inconsistently with it to provide that the county legislature appoint the community services director.
Very truly yours,
ERIC T. SCHNEIDERMAN Attorney General
[1] New York City is treated as a single county for this purpose, despite the fact that it contains five separate counties. Mental Hygiene Law § 41.03(1).
[2] As exceptions to this general rule, the Legislature may enact a special law relating to a local government's property, affairs, or government only upon the local government's request or in the event of an emergency that is certified by the Governor, and such emergency special legislation must be approved by two-thirds of the members of each house of the Legislature. N.Y. Const. Art. IX, § 2(b)(2).
For purposes of home rule, a general law is a law that in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns, or all villages.Id. § 3(d)(1). Conversely, a "special law" is one that in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns, or villages. Id. § 3(d)(4).
[3] These provisions were subsequently transferred to the Municipal Home Rule Law, where they comprise sections 30-35.
[4] The charter may require that appointments be subject to confirmation by the county legislature. Id. at 45. *Page 1