[993 NE2d 393, 970 NYS2d 907]

GREATER NEW YORK TAXI ASSOCIATION et al., Respondents, v STATE OF NEW YORK et al., Appellants, and LIVERY BASE OWNERS INC. et al., Intervenors-Appellants.

TAXICAB SERVICE ASSOCIATION et al., Respondents, v STATE OF NEW YORK et al., Appellants, and LIVERY BASE OWNERS INC., et al., Intervenors-Appellants.

METROPOLITAN TAXICAB BOARD OF TRADE et al., Respondents, and THE LIVERY ROUNDTABLE, INC., et al., Intervenors-Respondents, v MICHAEL R. BLOOMBERG, as Mayor of the City of New York, et al., Appellants, and LIVERY BASE OWNERS INC., et al., Intervenors-Appellants.

Argued and submitted April 24, 2013; decided June 6, 2013

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Scott Shorr, Leonard J. Koerner* and *Francis F. Caputo* of counsel), for Michael R. Bloomberg and others, appellants in the first, second and third above-entitled actions. I. Because the HAIL Act furthers, and bears a direct and reasonable relationship to, the State's substantial concern with New York City's for-hire transportation system, the Act did not require a home rule message. (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 97 NY2d 378; *Adler v Deegan,* 251 NY 467; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.,*

46 NY2d 358; *City of New York v State of New York*, 94 NY2d 577; *Matter of Kelley v McGee*, 57 NY2d 522; *Bugeja v City of New York*, 24 AD2d 151, 17 NY2d 606; *Wambat Realty Corp. v State of New York*, 41 NY2d 490; *People v Grant*, 306 NY 258; *New York State Pub. Empls. Fedn., AFL-CIO v City of Albany*, 72 NY2d 96; *City of New York v Rice*, 198 NY 124.) II. Because the HAIL Act involves a substantial state interest, the state constitution did not require double enactment. (*Wambat Realty Corp. v State of New York*, 41 NY2d 490; *Floyd v New York State Urban Dev. Corp.*, 33 NY2d 1.) III. The HAIL Act does not grant for-hire vehicle drivers, owners or base stations unconstitutional exclusive privileges. (*Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327; *Matter of Union Ferry Co. of Brooklyn*, 98 NY 139; *City of Rochester v Gutberlett*, 211 NY 309; *Matter of New York El. R.R. Co.*, 70 NY 327; *Matter of Corning v Donohue*, 37 AD2d 213, 29 NY2d 209; *Fox v Mohawk & Hudson Riv. Humane Socy.*, 165 NY 517; *American Consumer Indus. v City of New York*, 28 AD2d 38; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Trustees of Exempt Firemen's Benevolent Fund of City of N.Y. v Roome*, 93 NY 313; *People v Griswold*, 213 NY 92.)

*Eric T. Schneiderman, Attorney General*, New York City (*Richard Dearing, Barbara D. Underwood, Andrew W. Amend* and *Claude S. Platton* of counsel), for State of New York and others, appellants in the first and second above-entitled actions and intervenor-appellant in the third above-entitled action. I. The legislature acted well within its constitutional authority in ensuring access to safe and reliable transportation for millions of New York City residents and visitors. (*Wambat Realty Corp. v State of New York*, 41 NY2d 490; *People v De Jesus*, 54 NY2d 465; *Matter of Town of Islip v Cuomo*, 64 NY2d 50; *Matter of Kelley v McGee*, 57 NY2d 522; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Adler v Deegan*, 251 NY 467; *City of New York v State of New York*, 67 Misc 2d 513, 31 NY2d 804; *New York Steam Corp. v City of New York*, 268 NY 137; *Bugeja v City of New York*, 24 AD2d 151, 17 NY2d 606; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378.) II. The HAIL Act does not give present holders of livery licenses a monopoly prohibited by the Exclusive Privileges Clause. (*Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327; *Matter of Union Ferry Co. of Brooklyn*, 98 NY 139; *Trustees of Exempt Firemen's Benevolent Fund of City of N.Y. v Roome*, 93 NY 313; *Fox v Mohawk & Hudson Riv. Humane Socy.*, 165 NY 517; *19th St. Assoc. v State of New York*,

172 AD2d 380, 79 NY2d 434; *Matter of New York El. R.R. Co.*, 70 NY 327; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *People v Knox*, 12 NY3d 60; *City of Rochester v Gutberlett*, 211 NY 309.)

*Greenberg Traurig, LLP*, New York City (*Stephen L. Saxl, Israel Rubin* and *Ryan F. Harsch* of counsel), for Livery Base Owners Inc. and another, intervenors-appellants in the first, second and third above-entitled actions. I. Because the state legislature enacted the Street Hail Livery Law in furtherance of the substantial state interest in New York City's for-hire transportation system, and the Act bears a direct and reasonable relationship to that substantial state interest, the Act did not require a home rule message. (*Adler v Deegan*, 251 NY 467; *Wambat Realty Corp. v State of New York*, 41 NY2d 490; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378; *City of New York v State of New York*, 94 NY2d 577; *City of New York v State of New York*, 67 Misc 2d 513, 31 NY2d 804; *Uniformed Firefighters Assn. v City of New York*, 50 NY2d 85; *Matter of Town of Islip v Cuomo*, 64 NY2d 50; *Robertson v Zimmermann*, 268 NY 52; *Bugeja v City of New York*, 24 AD2d 151, 17 NY2d 606; *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380.) II. Because the Street Hail Livery Law involves a substantial state interest, the state constitution did not require double enactment. (*Wambat Realty Corp. v State of New York*, 41 NY2d 490.) III. The Street Hail Livery Law does not grant unconstitutional exclusive privileges to livery drivers or owners. (*Matter of Union Ferry Co. of Brooklyn*, 98 NY 139; *Fox v Mohawk & Hudson Riv. Humane Socy.*, 165 NY 517; *American Consumer Indus. v City of New York*, 28 AD2d 38; *Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327; *City of Rochester v Gutberlett*, 211 NY 309.)

*Mintz & Gold LLP*, New York City (*Steven G. Mintz* and *Lisabeth Harrison* of counsel), for respondents in the first above-entitled action. I. The HAIL Act violates the Home Rule Clause of the state constitution. (*City of New York v State of New York*, 94 NY2d 577; *Wambat Realty Corp. v State of New York*, 41 NY2d 490; *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *Adler v Deegan*, 251 NY 467; *Matter of New York El. R.R. Co.*, 70 NY 327; *Newell v People*, 7 NY 9; *Matter of Osborn v Cohen*, 272 NY 55; *Matter of Town of Islip v Cuomo*, 64 NY2d 50; *New York Steam Corp. v City of New York*, 268 NY 137; *Bugeja v City of New York*, 24 AD2d 151, 17 NY2d 606.) II. The HAIL Act violates the Double Enactment Clause of

the state constitution. (*Wambat Realty Corp. v State of New York*, 41 NY2d 490; *Floyd v New York State Urban Dev. Corp.*, 33 NY2d 1; *People v Rathbone*, 145 NY 434; *Newell v People*, 7 NY 9.) III. The HAIL Act violates the Exclusive Privileges Clause of the state constitution. (*Wambat Realty Corp. v State of New York*, 41 NY2d 490; *19th St. Assoc. v State of New York*, 79 NY2d 434.)

*Gibson, Dunn & Crutcher LLP*, New York City (*Randy M. Mastro, Akiva Shapiro, Paul Kremer* and *Seth Rokosky* of counsel), for respondents in the second above-entitled action. I. The State does not have a substantial interest in private transportation in New York City; and there are no other substantial state interests advanced by the HAIL Act. (*City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *Adler v Deegan*, 251 NY 467; *Matter of McAneny v Board of Estimate & Apportionment of City of N.Y.*, 232 NY 377; *Matter of Osborn v Cohen*, 272 NY 55; *Admiral Realty Co. v City of New York*, 206 NY 110; *Salzman v Impellitteri*, 203 Misc 486, 305 NY 414; *Noel v New York City Taxi & Limousine Commn.*, 687 F3d 63; *Freidman v General Motors Corp.*, 721 F Supp 2d 218; *Matter of Rudack v Valentine*, 163 Misc 326; *Robertson v Zimmermann*, 268 NY 52.) II. There is no "reasonable relationship" between the HAIL Act and the interests it allegedly advances. (*City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378; *City of New York v Village of Lawrence*, 250 NY 429; *Adler v Deegan*, 251 NY 467; *New York Steam Corp. v City of New York*, 268 NY 137; *Bugeja v City of New York*, 24 AD2d 151; *Robertson v Zimmermann*, 268 NY 52; *Metropolitan Transp. Auth. v County of Nassau*, 28 NY2d 385; *City of New York v State of New York*, 31 NY2d 804; *Wambat Realty Corp. v State of New York*, 41 NY2d 490.)

*Emery Celli Brinckerhoff & Abady LLP*, New York City (*Richard D. Emery* of counsel), for respondents in the third above-entitled action. I. The HAIL Act is an unconstitutional infringement on New York City's power of home rule. (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378; *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *Baldwin v City of Buffalo*, 6 NY2d 168; *Matter of Mayor of City of N.Y.*, 246 NY 72; *Adler v Deegan*, 251 NY 467; *Matter of Osborn v Cohen*, 272 NY 55; *Matter of Torsoe Bros. Constr. Corp. v Board of Trustees of Inc. Vil. of Monroe*, 49 AD2d 461; *Suffolk County Bldrs. Assn. v County of Suffolk*, 46

NY2d 613; *Matter of United States Steel Corp. v Gerosa*, 7 NY2d 454; *City of New York v Village of Lawrence*, 250 NY 429.) II. The HAIL Act violates the Exclusive Privileges Clause of the state constitution. (*19th St. Assoc. v State of New York*, 172 AD2d 380, 79 NY2d 434; *Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327; *Matter of Henneberger*, 155 NY 420; *Fox v Mohawk & Hudson Riv. Humane Socy.*, 165 NY 517; *Matter of New York El. R.R. Co.*, 70 NY 327; *Matter of Union Ferry Co. of Brooklyn*, 98 NY 139; *People v Griswold*, 213 NY 92; *City of Rochester v Gutberlett*, 211 NY 309; *Matter of Corning v Donohue*, 37 AD2d 213, 29 NY2d 209; *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380.)

*The Shanker Law Firm, P.C.*, New York City (*Steven J. Shanker* of counsel), and *Davis Wright Tremaine LLP* (*Robert Balin* of counsel) for intervenors-respondents in the third above-entitled action. The HAIL Act is an unconstitutional intrusion into local government affairs in violation of home rule. (*Baldwin v City of Buffalo*, 6 NY2d 168; *Adler v Deegan*, 251 NY 467; *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *Matter of Mayor of City of N.Y.*, 246 NY 72; *City of New York v Village of Lawrence*, 250 NY 429; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 63 AD2d 157, 46 NY2d 358.)

*Office of the Manhattan Borough President*, New York City (*Andrew L. Kalloch* of counsel), for Manhattan Borough President Scott M. Stringer in the first, second and third above-entitled actions, amicus curiae. I. The constitutional history of home rule in New York shows that while municipal governments exercise control over purely local affairs, the state retains plenary authority over issues of statewide concern. (*Hunter v Pittsburgh*, 207 US 161; *Adler v Deegan*, 251 NY 467; *Robertson v Zimmermann*, 268 NY 52; *Berenson v Town of New Castle*, 38 NY2d 102.) II. Transportation in the City of New York and its surrounding counties is clearly a matter of substantial state concern. (*Giuliani v Council of City of N.Y.*, 181 Misc 2d 830; *Matter of New York City Comm. for Taxi Safety v New York City Taxi & Limousine Commn.*, 256 AD2d 136; *People v Kerr*, 27 NY 188; *City of New York v State of New York*, 94 NY2d 577; *Whelan v Wagner*, 4 NY2d 575; *Morin v Foster*, 45 NY2d 287.) III. New York City exercises considerable control over the implementation of the HAIL Act. (*New York Steam Corp. v City of New York*, 268 NY 137; *Sonmax, Inc. v City of New York*, 43 NY2d 253.) IV. The HAIL Act will fundamentally transform taxi

service in northern Manhattan, the Bronx, Queens, Brooklyn, and Staten Island, and will vastly improve accessibility in the New York City metropolitan area. (*Noel v New York City Taxi & Limousine Commn.*, 687 F3d 63.) V. Courts have historically shown due deference toward the legislature. (*City of New York v State of New York*, 76 NY2d 479; *Matter of Board of Supervisors of Ontario County v Water Power & Control Commn.*, 227 App Div 345, 255 NY 531; *Robertson v Zimmermann*, 268 NY 52; *Elmwood-Utica Houses v Buffalo Sewer Auth.*, 65 NY2d 489; *Matter of Taylor v Sise*, 33 NY2d 357.)

## OPINION OF THE COURT

PIGOTT, J.

At issue on this appeal is the constitutionality of chapter 602 of the Laws of 2011, as amended by chapter 9 of the Laws of 2012 ("HAIL Act"), which regulates medallion taxicabs (or "yellow cabs") and livery vehicles, vital parts of New York City's transportation system. The Act's stated aim is to address certain mobility deficiencies in the City of New York, namely: the lack of accessible vehicles for residents and nonresidents with disabilities; the dearth of available yellow cabs in the four boroughs outside Manhattan ("outer boroughs"), where residents and nonresidents must instead rely on livery vehicles; and the sparse availability of yellow cab service outside Manhattan's central business district[1] and the two Queens airports, locations where close to 95% of yellow cabs pick up their customers (*see* Sponsor's Mem, Bill Jacket, L 2012, ch 9).

### I

Because the HAIL Act arguably affects the yellow cab and livery vehicle enterprises in significant ways, we first address the traditional distinctions between them before addressing the substance of the Act itself. Both enterprises are regulated by the Taxi and Limousine Commission (TLC), but are subject to different rules of operation.

Yellow cabs operate under a transferable license or medallion, which is a numbered plate issued by the TLC that is affixed to the outside of a taxicab as physical evidence that the taxicab has been licensed to operate as a medallion taxicab (*see* 35 RCNY 51-03). These cabs are metered vehicles that must charge uniform rates (*see* Administrative Code of City of NY §§ 19-502

---

1. The central business district is the part of Manhattan that is south of East 96th Street and West 110th Street (*see e.g.* HAIL Act § 4 [c]).

[k]-[l]; 19-514 [a]; 35 RCNY 58-38). They possess the exclusive right to pick up passengers pursuant to street "hails" from any location in the City (*see* Administrative Code of City of NY § 19-504 [a] [1]).

In 1956, the New York State Legislature delegated to the City Council the discretionary authority to register, license and limit the number of yellow cabs, and to establish ordinances and regulations regulating parking and passenger pick-up and discharges (*see* General Municipal Law § 181 [1], [2]; *see also* NY City Charter § 2303 [b] [4]).[2] Prior to 1996, the City Council had capped the number of medallions that the TLC was permitted to issue at 11,787. Between 1996 and 2008, the City Council approved the issuance of 1,450 additional medallions, resulting in a total of 13,237. Given the limited supply of medallions, their value has increased yearly and the competition for obtaining one is fierce. Moreover, according to the TLC, out of the 13,237 issued medallions, only 231 are cabs that are accessible to people with disabilities.

In contrast to yellow cabs, livery vehicles are prohibited from picking up street hails and may accept passengers only on the basis of telephone contract or other prearrangement (*see* Administrative Code of City of NY § 19-507 [a] [4]). The livery client contacts a "base station" that dispatches a livery vehicle to the requested location (Administrative Code of City of NY § 19-511). However, this has not prevented some livery vehicles from illegally accepting street hails, where the price of the fare is not regulated. As with yellow cabs, a substantial number of livery vehicles are ill-equipped to provide service to persons with disabilities.

## II

Enacted by the New York State Legislature in the latter part of 2011 and the early part of 2012, the HAIL Act creates, among other things, a "HAIL License Program" that calls for the TLC to issue 18,000 "Hail Accessible Inter-borough Licenses" allowing "for-hire vehicles,"[3] i.e., livery vehicles, to accept street

---

**2.** Because the sale of medallions above their administrative cost implicates the New York State Legislature's taxing power, the City Council must first obtain legislative approval before auctioning the medallions (*see* NY Const, art XVI, § 1).

**3.** A "for-hire vehicle" is "a motor vehicle carrying passengers for-hire in the city, with a seating capacity of twenty passengers or less, not including the

*(n. cont'd)*

hails in the outer boroughs and those areas in Manhattan outside its central business district (HAIL Act §§ 4 [b]; 5 [a]). TLC-licensed yellow cabs retain "the exclusive right . . . to pick up passengers via street hail in such areas of the city of New York wherein HAIL license holders are prohibited from accepting such passengers" (*id.* § 11). The Act demarcates these areas—Manhattan's central business district and the two Queens airports—as the "HAIL Exclusionary Zone" (*id.* § 4 [c]).

Livery vehicles without a HAIL license are permitted to accept prearranged calls from a base station established pursuant to New York City Administrative Code § 19-511 inside the HAIL Exclusionary Zone, while livery vehicles possessing a HAIL license may accept prearranged calls outside the HAIL Exclusionary Zone and at airports (*id.* § 5 [f]). HAIL vehicles,[4] however, may not accept prearranged calls within the HAIL Exclusionary Zone (*id.* § 4 [c]). Drivers with a valid HAIL license who accept street hails in areas where such vehicles are not permitted to do so are subject to various penalties (*id.* §§ 25, 26; *see* Administrative Code of City of NY § 19-506 [k], [l]).

The Act calls for HAIL licenses to be distributed in increments of 6,000 over three years, with 20% of the first 6,000 earmarked for accessible vehicles[5] (*id.* § 5 [b]). Subject to a "HAIL market analysis," which the TLC must prepare and submit to the City Council and the New York State Department of Transportation "examining HAIL vehicle rider demand, shortages and the need for adequate and affordable transportation" (*id.* § 6), the TLC may issue up to 6,000 HAIL licenses in the second and third years ("second issuance" and "third issuance," respectively) (*id.* § 5 [b]). The second and third issuances are likewise subject to the 20% accessibility requirement unless the TLC, having conducted a study and issued a report relative

driver, *other than a taxicab*, coach, commuter van or an authorized bus operating pursuant to applicable provisions of law" (HAIL Act § 4 [d] [emphasis supplied]).

4. A "HAIL vehicle" is "a for-hire vehicle having a taximeter and a TLC-sanctioned trip record system and [is] subject to a HAIL license" (HAIL Act § 4 [f]).

5. Accessible vehicles are "for-hire" vehicles that are "designed for the purpose of transporting persons in wheelchairs or contain[ ] a physical device or alteration designed to permit access to and enable the transportation of persons in wheelchairs in accordance with the Americans with Disabilities Act" (HAIL Act § 4 [a]).

to "the accessibility of vehicles with HAIL licenses in the Disabled Accessibility Plan,"[6] recommends a different percentage (*id.*; *see* HAIL Act § 10). HAIL licenses issued during the first, second and third years will cost $1,500, $3,000 and $4,500, respectively (*id.* § 5 [d]).

In order to introduce accessible vehicles into the HAIL vehicle fleet, the TLC must launch a program that provides "grants to purchasers of HAIL licenses restricted to accessible vehicles as provided in [HAIL Act § 9 (b)]" or provide "vehicles to purchasers of HAIL licenses restricted to accessible vehicles on affordable and financially feasible terms" (HAIL Act § 9 [a] [i], [ii]). HAIL Act § 9 (b) provides that "[p]urchasers of hail licenses restricted to accessible vehicles . . . shall be eligible to apply for grants" of up to $15,000 to apply toward either the purchase of "an accessible vehicle for use as a HAIL vehicle" or toward "retrofitting a vehicle to be an accessible vehicle," with the total amount of such grants not to exceed $54 million.

As it relates to yellow cabs, the Act creates an "Accessible Taxicab Program," which allows the Mayor to administratively authorize the TLC to issue by public sale up to 2,000 taxicab licenses (or medallions) that are restricted to vehicles designated for the purpose of transporting persons in wheelchairs or containing a physical device or alteration designed to permit access to and enable the transportation of persons in wheelchairs in accordance with the Americans with Disabilities Act (*see* HAIL Act § 8). The Act states that not more than 400 of such licenses may be issued until the Disabled Accessibility Plan is approved by the New York State Department of Transportation. Moreover, the Mayor's authority to issue these licenses is conditioned upon the TLC making both the HAIL licenses in section 5 of the Act and the "hail privilege vehicle permits" authorized pursuant to section 4 of chapter 602 of the Laws of 2011 available for issuance. These new accessible taxicabs will possess the exclusive right to pick up passengers via street hail from any location within the city of New York where HAIL license holders are prohibited from accepting such passengers (*id.* § 11).

---

**6.** The "Disabled Accessibility Plan" is, among other things, a "comprehensive plan" that provides "an accessibility plan (i) that will lead to meaningful accessibility over a period of years for individuals with disabilities to all taxicabs, for-hire vehicles and HAIL vehicles through gradual phase-in of accessible vehicles to the taxicab, for-hire vehicle and HAIL vehicle transport system" (HAIL Act § 10 [a]).

Finally, as relevant here, the Act contains what has been termed a "poison pill." It "shall be construed as a whole, and all parts of it shall be read and construed together" such that "[i]f any part" of or any amendment made to it by chapter 9 of the Laws of 2012 "shall be adjudged by any court of competent jurisdiction to be invalid, the remainder of [the] act shall be invalidated and shall be deemed to have not taken effect" (L 2011, ch 602, § 6, as amended by L 2012, ch 9, § 3).

## III

Plaintiffs, who are medallion owners and their representatives, an association of credit union lenders and credit unions that finance medallion purchases, and a member of the New York City Council, challenge the HAIL Act on the ground that regulation of yellow cab and livery enterprises has always been a matter of local concern. All plaintiffs claim that the Act violates NY Constitution, article IX, § 2 (b) (2) ("Municipal Home Rule Clause"). Certain plaintiffs allege that the Act violates NY Constitution, article IX, § 2 (b) (1) ("Double Enactment Clause") and NY Constitution, article III, § 17 ("Exclusive Privileges Clause").

Shortly after the Governor signed the Act, plaintiffs commenced these actions against defendants, all seeking, among other relief, judgments declaring the Act unconstitutional and seeking injunctions against the Act's implementation. At plaintiffs' request, Supreme Court issued an order temporarily restraining the State from implementing any section of the Act.[7] The parties moved to either dismiss the complaint or for summary judgment. As relevant here, Supreme Court granted plaintiffs' motions, entered judgments nullifying the Act, and declaring that it violated the Municipal Home Rule, Double Enactment and Exclusive Privileges Clauses of the New York Constitution (see 2012 NY Slip Op 32221[U] [2012]). These direct appeals are before us on CPLR 5601 (b) constitutional grounds, the parties having stipulated that they would not appeal the nonconstitutional claims decided adversely to them by Supreme Court.

## IV

The Municipal Home Rule Clause grants local governments considerable independence relative to local concerns. Just as

---

**7.** Supreme Court also granted the motions of certain livery car companies to intervene on behalf of plaintiffs and defendants.

there are affairs that are exclusively those of the State, "[t]here are some affairs intimately connected with the exercise by the city of its corporate functions, which are city affairs only" (*Adler v Deegan*, 251 NY 467, 489 [1929, Cardozo, Ch. J., concurring]). Nonetheless, "[a] zone . . . exists . . . where State and city concerns overlap and intermingle" (*id.*).

Enacted to protect the autonomy of local governments, the Municipal Home Rule Clause allows the legislature to

> "act in relation to the property, affairs or govern-
> ment of any local government only by general law,
> or by special law only (a) on request of two-thirds of
> the total membership of its legislative body or on
> request of its chief executive officer concurred in by
> a majority of such membership" (NY Const, art IX,
> § 2 [b] [2]).

Subdivision (a)'s directives are commonly referred to as the "home rule message" requirement because whenever a special law is enacted, it should be at the locality's request.

As plaintiffs point out, the HAIL Act is a special law, i.e., it is a law that "in terms and in effect applies to one or more, but not all . . . cities" (NY Const, art IX, § 3 [d] [4]). Although the Municipal Home Rule Clause could be read to direct that a home rule message was required before the Act's enactment, there is an exception to that requirement where the State possesses a "substantial interest" in the subject matter and "the enact-ment . . . bear[s] a reasonable relationship to the legitimate, accompanying substantial State concern" (*City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380, 391 [1996] [*PBA I*]; *see Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith*, 21 NY3d 309 [2013] [decided today]; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378, 386 [2001] [*PBA II*]). The latter requirement serves "as a corollary to the constitutional balancing of overlap-ping local and state interests requiring that the 'subjects of State concern [be] *directly* and substantially involved' " (*PBA I*, 89 NY2d at 391, quoting *Adler*, 251 NY at 490).

Plaintiffs challenge the Act on the ground that the State lacks a substantial interest in the regulation of the yellow cab and livery enterprises in the City, claiming that such regulation has historically been within the province of the City itself. Although the State has delegated certain powers to the City Council

concerning the regulation of yellow cabs (*see* General Municipal Law § 181), that does not mean that it has surrendered its authority to regulate in that area, particularly where the proposed regulation promotes a substantial state interest (*see e.g. Adler*, 251 NY at 488 [Cardozo, Ch. J., concurring] [noting that the power to regulate tenements "was subject in its creation to the overriding action of the State"]).

Our review concerning what constitutes a substantial state interest is not dependent on what historically has been the domain of a given locality. Rather, our determination is dependent on the "stated purpose and legislative history of the act in question" (*PBA I*, 89 NY2d at 392; *see City of New York v State of New York*, 94 NY2d 577, 590 [2000] [conducting a substantial state interest analysis of a special law rescinding a state tax on resident commuters by looking at the legislation's "stated justification" and legislative history]; *PBA II*, 97 NY2d at 389 [finding a special law constitutional because it expressly stated "the substantial State concern sought to be addressed" and ensured that the law was "rationally related to that concern"]; *Matter of Town of Islip v Cuomo*, 64 NY2d 50, 53-54 [1984] [reviewing the legislative history of a special law limiting the disposal of solid waste by landfill in Suffolk and Nassau counties]; *Matter of Kelley v McGee*, 57 NY2d 522, 539-540 [1982] [reviewing legislation concerning salaries of District Attorneys]).

In the cases where we have found a special law to be unconstitutional, we have done so, in part, because the legislation failed to identify a substantial state interest and/or the legislative history did not support the State's reason for enacting it (*see PBA I*, 89 NY2d at 392-393 [reviewing legislative history only after recognizing that the legislation failed to "expressly identify any State concern motivating its enactment," and concluding that the statute bore no reasonable relationship to the state concern asserted during litigation]; *Matter of Osborn v Cohen*, 272 NY 55, 59 [1936] [finding no "foundation in the record" that the establishment and control of fire departments are matters of state concern]).

■ We conclude that the HAIL Act addresses a matter of substantial state concern. This is not a purely local issue. Millions of people from within and without the State visit the City annually. Some of these visitors are disabled, and will undoubtably benefit from the increase in accessible vehicles in the Manhattan central business district and in the outer boroughs. The Act is for the benefit of all New Yorkers, and not merely

those residing within the City. Efficient transportation service in the State's largest city and international center of commerce is important to the entire State. The Act plainly furthers all of these significant goals.

Section one of the Act explains "that the public health, safety and welfare of the residents of the state of New York *traveling to, from and within* the city of New York is a matter of substantial state concern, including access to safe and reliable mass transportation such as taxicabs" (HAIL Act § 1 [emphasis supplied]). The Act is aimed at accommodating able-bodied and disabled residents and nonresidents of the City who "do not currently have sufficient access to legal, licensed taxicabs available for street hails." Specifically as it relates to residents and nonresidents with disabilities, the legislature concluded that only 1.8% of yellow cabs are accessible, and that an even smaller percentage of the approximately 23,000 livery vehicles are so equipped. The lack of accessible yellow cabs and livery vehicles impacts residents and nonresidents by "inhibit[ing] their basic daily activities" and preventing them "from being able to rely on the street hail system to get to a destination quickly, particularly in an emergency, or to travel to a location not near a subway or bus stop" (*id.*). Thus, it cannot be said that the legislature has offered only "speculative assertions" concerning the "possible State-wide implications of the subject matter" (*PBA I*, 89 NY2d at 391).

Plaintiffs find significance in the fact that in the years between 1996 and 2008 when the New York State Legislature approved the issuance of 1,450 new medallions, it did so only after the City Council issued a home rule message requesting such an increase. However, the fact that the legislature has previously entertained home rule messages in this field "is not determinative of the issue before us—whether such messages were constitutionally required" (*City of New York*, 94 NY2d at 591 [citation omitted]). Indeed, that the City Council must make a request to the legislature in order to issue and sell new medallions at a market rate only underscores that the State has an interest in the regulation of yellow cab services.

As its sponsor explained, the Act's purpose is to "allow the City to implement a taxi plan that will more effectively service all five boroughs of New York City and greatly increase the availability of accessible taxicabs and for-hire vehicles" (Sponsor's Mem, Bill Jacket, L 2012, ch 9). The issues the Act addresses are the lack of yellow cabs within the Manhattan

central business district that are accessible to the disabled and the general shortage of available yellow cab and livery vehicle transportation in underserved areas of the city, i.e., outside Manhattan's central business district and the two airports.

Plaintiffs next assert that the stated reasons for the Act's enactment must be viewed skeptically because it was not enacted until after negotiations broke down between the Mayor and City Council concerning the increase in taxicab and livery vehicle service in the underserved areas. However, we need not speculate on the legislature's motives "as a judicial construct for statutory analysis" and, instead, must direct our attention to whether the legislature acted within its constitutional purview in passing the legislation (*City of New York*, 94 NY2d at 591). To that end, we conclude that the Act addresses a substantial state interest.

That does not end the inquiry, however, because in order to be upheld as constitutional, the Act must "bear a reasonable relationship" to that state concern (*PBA I*, 89 NY2d at 391). As we explain in *Empire State Ch. of Associated Bldrs. & Contrs., Inc.*, (21 NY3d 309 [2013]), this requirement serves to establish that the legislation does in fact advance the asserted state interest, i.e. that the state interest is bona fide, not merely pretextual (*see PBA I* at 393). We conclude that a reasonable relationship exists. The Act consists of a series of interlocking provisions to address its stated purposes. The potential issuance of 18,000 HAIL licenses, dispersed in equal amounts over three years, will allow livery vehicles to legally accept street hails from residents and nonresidents in the outer boroughs and in Manhattan outside its central business district. That 20% of the first 6,000 HAIL licenses must be earmarked for accessible vehicles advances the state interest in providing street hail vehicles in those areas for residents and visitors with disabilities. To ensure that the market does not become saturated, the Act gives the TLC the authority to issue an additional 12,000 HAIL licenses once it conducts a market analysis to determine whether the issuance of additional HAIL licenses is necessary. Furthering the legislature's goals, the Act also allows HAIL licensees to apply for grants that will enable them to either purchase accessible vehicles or retrofit existing vehicles to meet the accessibility requirements.

Addressing the legislative finding concerning the lack of accessible yellow cabs in Manhattan's central business district, the Act permits the Mayor to "administratively authorize" the

TLC, an executive branch commission, to publicly sell up to 2,000 additional medallions that are restricted to accessible yellow cabs operating within zones where HAIL licensees are prohibited from accepting street hails (HAIL Act § 8). Only 400 of these medallions may be issued initially, with the remainder being issued only after the New York State Department of Transportation approves the Disabled Accessibility Plan as set forth in section 10 of the Act. Construed together, the Act's provisions bear a reasonable relationship to a substantial state interest.

Plaintiffs assert that the Act does not satisfy the "reasonable relationship" prong, claiming that it "eviscerates" the City's separation of powers by transferring to the Mayor the authority to issue up to 2,000 new medallions, and intrudes upon the City's budgeting authority to the extent that it allows the TLC to award $54 million in grants to HAIL licensees without giving the City Council any input as to how much money should be appropriated. Although it remains an open question whether our home rule analysis requires us to find each individual piece of legislation satisfies a substantial state interest, we address plaintiffs' arguments individually here because the "poison pill" provision contained in section 6 of the Act (L 2011, ch 602, § 6, as amended by L 2012, ch 9, § 3) provides that if one provision fails, the entire Act must fail.

Section 8 of the Act does not "transfer" any of the City Council's powers to the Mayor. Rather, it allows the Mayor to "administratively authorize the TLC" to issue "by public sale" up to 2,000 medallions. This is merely an implementation device and it does not encroach on the City Council's authority under section 2303 (b) (4) of the New York City Charter to issue additional taxicab licenses. As the governing body that passed this Act, it was within the state legislature's purview to delegate a portion of the Act's implementation to the Mayor, whose administrative authorization of the sale of the medallions advances a legitimate goal of this law, by securing accessible vehicles where they are needed most. Therefore, section 8 bears a reasonable relationship to the substantial state interest of increasing the supply of accessible yellow cabs.

It also cannot be reasonably argued that section 9's requirement calling for the TLC's establishment of a grant program to distribute up to $54 million in grants for the purchase or retrofitting of accessible HAIL vehicles interferes with the City Council's "power of the purse." First, the requirement furthers

the substantial state interest in providing accessible yellow cabs and livery vehicles and bears a reasonable relationship to those goals. Second, the Act does not direct the Mayor to include these grants in the TLC budget, nor does it direct the City Council to appropriate funds to support such grants. Third, the Act purports to raise revenue through the HAIL licensing fees and the potential auctioning off of the medallions, which may presumably offset the up to $54 million in grant money.

Nor does section 23 of the Act, which requires that penalties for violations of the Act be "transferred to the entity that issued the summons for [a HAIL vehicle] violation," intrude on the city's finances, as plaintiffs suggest. Section 23 provides, in pertinent part, that "[n]otwithstanding the provisions of any other law to the contrary, the New York state police may enforce any laws, rules or regulations related to vehicles with HAIL licenses," and requires that the commission or tribunal adjudicating liability for a violation pay "the money owed and collected to the entity that issued the summons for the violation." According to the New York City Charter, however, city revenues and those of the New York City Police Department that are "not required by law to be paid into any other fund or account shall be paid into . . . the 'general fund' " (NY City Charter § 109). In other words, the City maintains control over the funds derived from its law enforcement entities that enforce the Act, while the New York State Police receive monies for the summonses they issue.

Plainly, not only does the Act, including its challenged provisions, address substantial state concerns, but it also "bear[s] a reasonable relationship" to those concerns. Therefore, Supreme Court erred in concluding that the Act violates the Municipal Home Rule Clause.

## V

Certain plaintiffs assert that the HAIL Act violates the "Double Enactment Clause," which states that, with certain exceptions, the legislature:

> "Shall enact, and may from time to time amend, a statute of local governments granting to local governments powers including but not limited to those of local legislation and administration in addition to the powers vested in them by this article. A power granted in such statute may be repealed,

diminished, impaired or suspended only by enactment of a statute by the legislature with the approval of the governor at its regular session in one calendar year and the re-enactment and approval of such statute in the following year" (NY Const, art IX, § 2 [b] [1]).

The Double Enactment Clause "was intended to afford localities protection from hasty and ill-considered legislative judgments" but "was not . . . designed as a rigid impenetrable barrier to ordinary legislative enactments in matters of State concern" (*Wambat Realty Corp. v State of New York*, 41 NY2d 490, 491-492 [1977]).

██ It has not been demonstrated that the Act "repealed, diminished, impaired or suspended" any power in "a statute of local governments." The Double Enactment Clause is no more exacting on the limits of state power than the Home Rule Clause, and, because we conclude that the Act addresses a substantial state concern, plaintiffs' Double Enactment Clause argument necessarily fails.

## VI

Finally, certain plaintiffs argue that the HAIL Act violates the Exclusive Privileges Clause. That clause provides that "[t]he legislature shall not pass a private or local bill . . . [g]ranting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever" (NY Const, art III, § 17). The Exclusive Privileges Clause, which targets monopolies, may only be violated if the "private or local bill" is "directed at a single entity" *and* it confers "a privilege upon the single entity to the exclusion of all others" (*Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327, 360-361 and n 27 [2005]).

██ Plaintiffs claim that the Act grants exclusive privileges to the livery industry at the expense of all others, including the yellow cab industry, because it prohibits members of the yellow cab industry, or members of the general public, from obtaining a HAIL license. According to plaintiffs, because the HAIL Act authorizes the issuance of up to 18,000 licenses and allows only the current livery industry members to purchase them, it grants an exclusive privilege to those members. We disagree.

The licensing provisions apply to a class consisting of close to 60,000 livery vehicle drivers and owners. To be sure, the Act

provides that "[w]ithin the first three years of the first issuance, HAIL licenses may be issued only to owners of for-hire vehicles or for-hire drivers who have been licensed by the TLC for at least one year and are in good standing with the TLC" (HAIL Act § 5 [b]), but that does not limit the number of people who may obtain one. Indeed, in order to qualify, all one needs to do is obtain a TLC license, operate a livery vehicle for one year and maintain good standing with the TLC. Thus, the number of persons who are able to obtain HAIL licenses will likely vary over time. This is not the type of "exclusivity" that the clause was meant to prohibit.

Accordingly, in all three appeals, the judgment of Supreme Court, insofar as appealed from, should be reversed, with costs, and judgment should be granted to defendants declaring that chapter 602 of the Laws of 2011, as amended by chapter 9 of the Laws of 2012, is constitutional.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH and RIVERA concur; Judge ABDUS-SALAAM taking no part.

In each case: Judgment, insofar as appealed from, reversed, with costs, and judgment granted to defendants declaring that chapter 602 of the Laws of 2011, as amended by chapter 9 of the Laws of 2012, is constitutional.