[992 NE2d 1067, 970 NYS2d 724]

EMPIRE STATE CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., et al., Appellants, v M. PATRICIA SMITH, in Her Official Capacity as Commissioner, New York State Department of Labor, et al., Respondents.

Argued April 24, 2013; decided June 6, 2013

## POINTS OF COUNSEL

*Phillips Lytle LLP*, Buffalo (*Timothy W. Hoover, Michael B. Powers* and *William J. Simon* of counsel), for appellants. I. The differential thresholds enacted by the 2008 amendments are an invalid and unconstitutional special law, as they were enacted without any reasonable relationship to a substantial statewide concern. (*City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *Town of Black Brook v State of New York*, 41 NY2d 486; *Adler v Deegan*, 251 NY 467; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378; *Farrington v Pinckney*, 1 NY2d 74; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Lincoln Bldg. Assoc. v Barr*, 1 NY2d 413; *Uniformed Firefighters Assn. v City of New York*, 50 NY2d 85; *Port Jefferson Health Care Facility v Wing*, 94 NY2d 284; *Paterson v University of State of N.Y.*, 14 NY2d 432.) II. The Labor Law § 222 (2) (e) apprenticeship requirements apply to both Wicks Law multi-prime and Wicks Law project labor agreement opt-out contracting, and violate the Privileges and Immunities Clause and the Commerce Clause, as they exclude all out-of-state contractors from all Wicks Law contracting. (*Rosner v Metropolitan Prop. & Liab. Ins. Co.*, 96 NY2d 475; *A.J. Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574; *Squadrito v Griebsch*, 1 NY2d 471; *Feher Rubbish Removal, Inc. v New York State Dept. of Labor, Bur. of Pub. Works*, 28 AD3d 1; *Meghrig v KFC Western, Inc.*, 516 US 479; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95; *Matter of Sbriglio v Novello*, 44 AD3d 1212; *Matter of Toys "R" Us v Silva*, 89 NY2d 411; *Matter of Daimler-Chrysler Corp. v Spitzer*, 7 NY3d 653; *Christensen v Harris County*, 529 US 576.) III. The 2008 amendments violate the Equal Protection and Substantive Due Process Clauses of the New York and United States Constitutions, and State Finance Law § 123-b. (*Massachusetts Bd. of Retirement v Murgia*, 427 US 307; *Alevy v Downstate Med. Ctr. of State of N.Y.*, 39 NY2d 326; *Washington v Glucksberg*, 521 US 702; *Hernandez v Robles*, 7 NY3d 338; *Schnaier v Navarre Hotel & Importation Co.*, 182 NY 83; *Godfrey v Spano*, 13 NY3d 358.)

*Eric T. Schneiderman, Attorney General*, Albany (*Andrea Oser, Barbara D. Underwood* and *Allyson B. Levine* of counsel), for respondents. I. The Appellate Division properly rejected

plaintiffs' home rule challenge to the three-tiered monetary thresholds. (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378; *Wambat Realty Corp. v State of New York*, 41 NY2d 490; *Matter of Town of Islip v Cuomo*, 64 NY2d 50; *Matter of Kelley v McGee*, 57 NY2d 522; *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.*, 89 NY2d 380; *City of New York v Village of Lawrence*, 250 NY 429; *Baldwin v City of Buffalo*, 6 NY2d 168; *Hotel Dorset Co. v Trust for Cultural Resources of City of N.Y.*, 46 NY2d 358; *Farrington v Pinckney*, 1 NY2d 74; *Matter of Wood v Irving*, 85 NY2d 238.) II. The Appellate Division properly rejected plaintiffs' equal protection challenge to the tiered monetary threshold. (*Campaign for Fiscal Equity v State of New York*, 86 NY2d 307; *Affronti v Crosson*, 95 NY2d 713; *Maresca v Cuomo*, 64 NY2d 242; *Port Jefferson Health Care Facility v Wing*, 94 NY2d 284; *Schneider v Sobol*, 76 NY2d 309.) III. The Appellate Division properly rejected plaintiffs' constitutional challenges to Labor Law § 222. (*Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443; *Cohen v State of New York*, 94 NY2d 1; *McGowan v Burstein*, 71 NY2d 729; *United States v Salerno*, 481 US 739; *Alliance of Am. Insurers v Chu*, 77 NY2d 573; *Cleburne v Cleburne Living Center, Inc.*, 473 US 432; *Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth.*, 88 NY2d 56; *Campaign for Fiscal Equity v State of New York*, 86 NY2d 307; *Washington v Davis*, 426 US 229.) IV. Plaintiffs lack standing to bring a citizen-taxpayer claim, and any such claim lacks merit. (*Rudder v Pataki*, 93 NY2d 273; *Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801; *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579; *Godfrey v Spano*, 13 NY3d 358.)

## OPINION OF THE COURT

SMITH, J.

We hold that, where the legislature has enacted a law of statewide impact on a matter of substantial state concern but has not treated all areas of the state alike, the Home Rule section of the State Constitution does not require an examination into the reasonableness of the distinctions the legislature has made.

### I

The Wicks Law, originally enacted in 1912, requires public entities seeking bids on construction contracts to obtain "separate specifications" for three "subdivisions of the work to be

performed"—generally, plumbing, electrical and HVAC (heating, ventilating and air conditioning) work (L 1912, ch 514, § 50, now codified in General Municipal Law § 101, Public Housing Law § 151-a, State Finance Law § 135 and elsewhere). The law has long been controversial; public entities have complained that it makes contracting more burdensome and expensive (*see generally* Rosenstein & O'Reilly, *Wicks Law Revisited*, NYLJ, Nov. 13, 2007 at S1). Until 2008, the Wicks Law applied everywhere in the state to contracts whose cost exceeded $50,000.

This case concerns amendments to the Wicks Law enacted in 2008 that raised the $50,000 threshold, imposed so-called "apprenticeship requirements" on some public contracting, and made other changes not relevant here (L 2008, ch 57, part MM). The new, higher thresholds, unlike the old one, are not uniform throughout the state. They are $3 million in the five counties located in New York City; $1.5 million in Nassau, Suffolk and Westchester Counties; and $500,000 in the other 54 counties (*see id.* §§ 1, 2-6, 14).

Plaintiffs' main claim, asserted in their first cause of action, is that the 2008 legislation violates article IX, § 2 of the State Constitution (the Home Rule section) by unjustifiably favoring the eight counties with higher thresholds—i.e., by loosening Wicks Law restrictions to a greater extent for them than for the other counties. Plaintiffs also assert 20 other claims, largely directed at the apprenticeship requirements imposed by the 2008 legislation.

On defendants' motion pursuant to CPLR 3211, Supreme Court dismissed the complaint, holding, as to the Home Rule cause of action, that plaintiffs lacked standing to assert it and that in any event the challenged amendments to the Wicks Law did not violate the Home Rule section because they "were enacted in furtherance of and bear a reasonable relationship to a substantial statewide concern" (*Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith*, 30 Misc 3d 455, 457 [Sup Ct, Erie County 2010]). Supreme Court also rejected plaintiffs' other claims. The Appellate Division held that one plaintiff, the County of Erie, did have standing to sue, but agreed with Supreme Court that plaintiffs' Home Rule claim and all of their other claims failed on the merits; it modified Supreme Court's judgment by reinstating the complaint to the extent it sought declaratory relief, and declaring the 2008 legislation valid and constitutional (98 AD3d 335 [4th Dept 2012]). Two Appellate

Division Justices dissented; they agreed with the majority that the amendments addressed substantial state concerns, but concluded that the three-tiered classification of counties was not "rational and reasonably related to those State concerns" and was therefore invalid under the Home Rule section (*id.* at 351 [Peradotto, J., dissenting]).

Plaintiffs appeal to us as of right, pursuant to CPLR 5601 (a) and (b) (1). Like the Appellate Division majority, we conclude that at least one plaintiff, the County of Erie, has standing to assert the Home Rule claim (*see Town of Black Brook v State of New York*, 41 NY2d 486 [1977]), but that that claim fails on the merits. We find that most of plaintiffs' other claims fail also, but modify the Appellate Division order to reinstate four causes of action challenging the apprenticeship requirements as applied to out-of-state contractors.

## II

The Home Rule section of the State Constitution says:

> "(b) Subject to the bill of rights of local governments and other applicable provisions of this constitution, the legislature: . . .

> "(2) Shall have the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only (a) on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a majority of such membership, or (b) except in the case of the city of New York, on certificate of necessity from the governor reciting facts which in the judgment of the governor constitute an emergency requiring enactment of such law and, in such latter case, with the concurrence of two-thirds of the members elected to each house of the legislature." (NY Const, art IX, § 2 [b] [2].)

It is undisputed that neither of the prerequisites described in subdivisions (a) and (b) of section 2 (b) (2)—a so-called "home rule message" or a certificate of necessity from the governor— was met in this case. And we assume, without deciding, that the distinctions drawn between counties in the 2008 legislation make that legislation a "special law," defined in article IX, § 3 (d) (4), as relevant here, to be "[a] law which in terms and in

effect applies to one or more, but not all, counties." Nevertheless, we conclude that the legislation was not forbidden by the Home Rule section.

The language of article IX, § 2 (b) (2) seems broadly to prohibit, where the specified prerequisites are not met, the enactment of any special law "in relation to the property, affairs or government of any local government." Another subdivision of the same section, section 2 (c) (i), uses similar language in granting power to local governments:

> "every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government."

These two provisions might be read to mean that, in the absence of a home rule message or certificate of necessity, a local government's "property, affairs or government" is an area in which local governments are free to act, but from which the state legislature is excluded unless it legislates by general law. It was long ago recognized, however, that such a reading of the Constitution would not make sense—that there must be an area of overlap, indeed a very sizeable one, in which the state legislature acting by special law and local governments have concurrent powers. As Chief Judge Cardozo put it in his concurring opinion in *Adler v Deegan* (251 NY 467, 489 [1929]) (interpreting similar language in an earlier Constitution): "The Constitution . . . will not be read as enjoining an impossible dichotomy." He added:

> "The test is . . . that if the subject be in a substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality . . . I do not say that an affair must be one of city concern exclusively to bring it within the scope of the powers conferred upon the municipality . . . I assume that if the affair is partly State and partly local, the city is free to act until the State has intervened. As to concerns of this class there is thus concurrent jurisdiction for each in default of action by the other." (*Id.* at 491.)

We have adopted in later cases the test as Chief Judge Cardozo formulated it (*e.g. Wambat Realty Corp. v State of New York*, 41 NY2d 490, 494 [1977]; *Matter of Town of Islip v Cuomo*, 64 NY2d 50, 56-57 [1984]; *City of New York v Patrolmen's*

*Benevolent Assn. of City of N.Y.*, 89 NY2d 380, 390-391 [1996]; *Greater N.Y. Taxi Assn. v State of New York*, 21 NY3d 289 [2013] [decided today]). And we have found support in the Constitution's text for the view that the permitted spheres of the state legislature and localities overlap. We relied in *Town of Islip* on article IX, § 3 (a) (3) of the Constitution, which says:

> "Except as expressly provided, nothing in this article shall restrict or impair any power of the legislature in relation to . . . [m]atters other than the property, affairs or government of a local government." (*See Town of Islip*, 64 NY2d at 55-56.)

This language is not a mere redundancy—a statement that article IX, § 2 (b) (2) does not prohibit what it does not prohibit. A great deal of legislation relates *both* to "the property, affairs or government of a local government" and to "[m]atters other than the property, affairs or government of a local government"—i.e., to matters of substantial state concern. Where that is true, section 3 (a) (3), as we interpreted it in *Town of Islip*, establishes that section 2 (b) (2) does not prevent the State from acting by special law.

This principle controls this case. It can hardly be disputed, and plaintiffs here do not dispute, that the manner of bidding on public construction contracts is a matter of substantial state concern. The existence of the Wicks Law itself for the last century, and of much other legislation governing public contracting (*e.g.* General Municipal Law § 100-a [requiring competitive bidding]) attests to this. The very amendments of which plaintiffs complain, though they do not treat all counties alike, unquestionably affect the state as a whole.

Plaintiffs argue, however, that a finding that the legislation addresses a substantial state concern is not the end of the analysis. Relying on *City of New York v Patrolmen's Benevolent Assn. of City of N.Y.* (89 NY2d 380 [1996]) (*PBA I*), they say that the Home Rule section also imposes a separate reasonableness test on "special" legislation. Plaintiffs read too much into the *PBA I* decision.

PBA I involved an intervention by the state legislature in a dispute between New York City and one of its employee unions. The City and the PBA had failed to negotiate a collective bargaining agreement, and the City had requested its local Board of Collective Bargaining (BCB) to appoint an impasse arbitration panel. "[A]t that time," the legislature, acting

without a home rule message, passed a bill "which purported to give . . . exclusive jurisdiction over negotiation impasses between the City and the New York City police" to the BCB's state counterpart, the Public Employment Relations Board (PERB) (*id.* at 387). The legislature thus sought to create an exception, applicable only to negotiations between New York City and the police, to the statewide rule that local governments could "completely opt out of PERB's jurisdiction over impasse procedures" (*id.* at 388).

We held the legislation invalid under the Home Rule section, finding that it "cannot be upheld under any substantial State interest" (*id.* at 392). To the assertion that the expressed purposes of the legislation—"to create State-wide uniformity with respect to impasse procedures" and to "provide a fairer forum for the New York City police"—were of statewide import, we responded that the legislation "bears no reasonable relationship to those goals" (*id.* at 392-393 [emphasis removed]). Uniformity could hardly be advanced by legislation applicable to one jurisdiction only, and the "fairness" rationale was shown to be pretextual, because of the "unchallenged substantial equivalency" between PERB's impasse arbitration procedures and those of local bodies (*id.* at 393).

In short, we found in *PBA I* that the challenged legislation was the sort of state meddling in purely local affairs that the Home Rule section was enacted to prohibit. By contrast, five years later in a second PBA case, *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York* (97 NY2d 378, 387 [2001]), we upheld legislation providing "that *all* collective bargaining impasses reached between local governments and their police and fire unions are resolved by PERB" (emphasis added). This new statute, we said, "was enacted in furtherance of and bears a reasonable relationship to a substantial State-wide concern" (*id.* at 388).

The legislation here is nothing like the legislation at issue in *PBA I*; its relationship to matters of substantial state concern is obvious and undisputed. Plaintiffs claim that the relationship is not "reasonable" in that nothing in the legislative history, or in the arguments now made by the State, provides a reasonable explanation for the disparity that the 2008 legislation introduced into the Wicks Law thresholds—which are now six times as high in New York City, and three times as high in certain surrounding counties, as in the rest of the state. But *PBA I* did not use "reasonable relationship" in this sense; that case is not an

invitation to subject every geographical disparity in statewide legislation to a freestanding reasonableness analysis. The absence of a "reasonable relationship" in *PBA I* established that the challenged legislation was purely parochial, and of no real statewide importance; it could not reasonably be said to advance a substantial state interest. No such claim can be made in this case.

To subject legislation like the 2008 amendments to the Wicks Law to Home Rule analysis would lead us into a wilderness of anomalies. If statewide legislation like this is subject to Home Rule restrictions, how are the restrictions to be implemented? From where must a home rule message come? Plaintiffs' logic leads to the conclusion that there should have been such a message from every one of the 62 counties affected. And if the law was passed in violation of the Home Rule provisions, what is the remedy? Are we to cure the disparity between counties by raising the Wicks Law threshold in 54 counties, or by reducing it in eight counties to the level established elsewhere? Or should we hold the 2008 legislation wholly invalid—so that the Wicks Law threshold remains at $50,000 throughout the state, a result that surely would not please plaintiffs?

We conclude that the Home Rule provisions of the Constitution were never intended to apply to legislation like this. They were intended to prevent unjustifiable state interference in matters of purely local concern. No one contends such interference has occurred here.

### III

■ In addition to challenging the differences among the new Wicks Law thresholds, plaintiffs also challenge the apprenticeship provisions of the 2008 legislation. We conclude that four of plaintiffs' claims relating to these provisions—the second through fifth causes of action, alleging that the apprenticeship provisions favor in-state over out-of-state contractors in violation of the Federal Constitution—should not have been dismissed.

The 2008 legislation (L 2008, ch 57, part MM, § 18) added a new section 222 to the Labor Law. Section 222 makes the Wicks Law's bidding requirements inapplicable where a governmental entity requires its contractors to enter a "project labor agreement" (PLA) establishing a labor organization as the collective bargaining representative for all workers on the project (*see* Labor Law § 222 [1], [2] [a], [b]). One subdivision of that

section, Labor Law § 222 (2) (e), is of concern to us here. The first sentence of subdivision (2) (e)—which plaintiffs do not challenge—requires a governmental entity entering into a contract for a "project undertaken pursuant to this section" to consider a number of factors in choosing and approving contractors and subcontractors. The second sentence, which plaintiffs do challenge, says that "[w]ith respect to any contract" that exceeds the new Wicks Law thresholds:

> "the entity shall further require that each contractor and subcontractor shall participate in apprentice training programs in the trades of work it employs that have been approved by the department [of labor] for not less than three years and shall have graduated at least one apprentice in the last three years and shall have at least one apprentice currently enrolled in such apprenticeship training program."

Among the plaintiffs in this action are a Pennsylvania-based contractor, its owner-president, and one of its employees. In the second through fifth causes of action, these plaintiffs assert that the programs to which the second sentence of Labor Law § 222 (2) (e) refers—"apprentice training programs . . . approved by" the New York State Department of Labor—are not open to out-of-state contractors and subcontractors, and thus that section 222 (2) (e) effectively excludes them from all work on public construction projects whose costs exceed the Wicks Law thresholds. This exclusion, these plaintiffs allege, violates two clauses of the Federal Constitution, the Privileges and Immunities Clause (art IV, § 2, cl 1) and the Commerce Clause (art I, § 8, cl 3).

Defendants respond that the challenged sentence of the statute has much less impact than plaintiffs claim—that it applies not to all projects, but only to those that proceed under PLAs. Defendants stress that the title of section 222 is "Project labor agreements"; that its opening subsections define that term and set forth requirements for the use of PLAs; and that the first sentence of section 222 (2) (e) is made applicable "with respect to each project undertaken pursuant to this section"—i.e., that sentence is plainly limited to projects proceeding under PLAs. While the second sentence contains language that seems broader—referring to "any contract" that exceeds the new Wicks Law thresholds—defendants point out that the word "further" in the second sentence ("the entity shall further require")

links it to the first. Thus defendants say that the limited scope of the other provisions of section 222 should be read into the second sentence of section 222 (2) (e).

We accept, as did the courts below, defendants' view of the scope of the statute. This reading is a reasonable one, and it minimizes the constitutional problem. Unfortunately, however, it only minimizes the problem; it does not eliminate it. If the second sentence of Labor Law § 222 (2) (e) unconstitutionally discriminates against out-of-state contractors, it is invalid whether it applies to many projects or to relatively few.

Defendants do not appear to dispute that, if the effect of the second sentence of Labor Law § 222 (2) (e) is to exclude out-of-state contractors from bidding on certain New York contracts, both the Privileges and Immunities Clause and the dormant Commerce Clause have been violated. The Privileges and Immunities Clause says that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." The Commerce Clause empowers Congress "[t]o regulate Commerce . . . among the several States"; it has long been understood that this clause, though phrased as a grant of power to Congress, has a "dormant," or "negative," aspect that restricts state regulation of interstate commerce in the absence of congressional action. Both clauses significantly limit the power of states to give preferential treatment to their own citizens (*e.g. Hicklin v Orbeck*, 437 US 518 [1978] [Privileges and Immunities Clause]; *Oregon Waste Systems, Inc. v Department of Environmental Quality of Ore.*, 511 US 93 [1994] [dormant Commerce Clause]), and defendants do not argue that an outright exclusion of non-New York businesses from a class of public construction contracts would comply with these limitations. Rather, defendants argue that no such exclusion exists— that out-of-state contractors are able to "participate in" apprentice training programs as required by the second sentence of section 222 (2) (e), and so are not excluded from New York construction work that proceeds under PLAs.

On this motion to dismiss pursuant to CPLR 3211 we are unable to conclude, from the face of the complaint, the statute and the relevant regulations, that the apprenticeship requirements are not exclusionary. A Department of Labor regulation requires that the "sponsor" of each approved apprenticeship program have "a permanent facility located in New York State" (12 NYCRR 601.4 [a] [5]); thus, subject to a limited exception, a firm whose facilities are entirely outside New York cannot sponsor

an apprenticeship program. The exception is that out-of-state sponsors can obtain "reciprocal approval" for their own apprenticeship programs—but only to the extent that apprentices work on "projects funded, in whole or in part, with Federal money" (12 NYCRR 601.15 [c]; *see also* 12 NYCRR 601.3 [s]).

Defendants say that the inability of an out-of-state contractor to be a sponsor is immaterial, because Labor Law § 222 (2) (e) requires contractors only to "participate in" a program, not to sponsor one. Defendants suggest—but nothing in the record proves—that out-of-state contractors may "participate" in programs sponsored by New York labor organizations. (Defendants do not discuss the question of whether such programs are open to workers who do not live in New York. If not, the constitutional problem is not solved.) Indeed, defendants argue, with the support of an interpretative letter from the Department of Labor, that any contractor doing work on a project where a PLA is in effect automatically becomes a participant in the apprenticeship program of the union that is a party to the PLA. How this will work in practice for out-of-state contractors is not explained.

Plaintiffs reply by pointing out that the statute says not only that "each contractor and subcontractor shall participate in apprentice training programs" but also that the contractor or subcontractor "shall have graduated at least one apprentice in the last three years and shall have at least one apprentice currently enrolled." As plaintiffs argue, this seems to imply that the contractor must sponsor its own apprenticeship program, not merely have its employees trained in a program sponsored by others.

We conclude that plaintiffs' second through fifth causes of action sufficiently allege that the second sentence of Labor Law § 222 (2) (e) unconstitutionally excludes out-of-state contractors from some public construction work in New York. Perhaps defendants can show, on a motion for summary judgment or at trial, that no such exclusion exists, but on this record they have not done so.

## IV

Plaintiffs' remaining causes of action require only brief discussion. All but one of them assert that plaintiffs have been deprived either of equal protection or of substantive due process under the Federal or State Constitution. But no equal protection or due process violation is sufficiently alleged. The allegations

of the complaint do not show that any provision of the 2008 amendments to the Wicks Law divides persons into classes, or deprives any person of property, without a rational basis, or that any such provision infringes any plaintiff's fundamental right or intentionally discriminates against a protected class. The courts below properly dismissed all of these claims.

The remaining cause of action, the sixth, which challenges both the Wicks Law thresholds and the apprenticeship requirements of the 2008 legislation, is brought pursuant to State Finance Law § 123-b. That statute permits any "citizen taxpayer" to bring an action against a state officer or employee for causing "a wrongful expenditure, misappropriation, misapplication, or . . . other illegal or unconstitutional disbursement of state funds." We agree with the courts below that the statute has no application here. To the extent that plaintiffs' claims relate to state expenditures, they are merely claims "that state funds are not being spent wisely" not "that it is illegal to spend money *at all* for the questioned activity" (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 813-814 [2003]). Plaintiffs have not alleged "a sufficient nexus to fiscal activities of the State to allow for section 123-b standing" (*Rudder v Pataki*, 93 NY2d 273, 281 [1999]).

Accordingly, the order of the Appellate Division should be modified to reinstate the second, third, fourth and fifth causes of action in the complaint, and as so modified affirmed, without costs.

Chief Judge Lippman and Judges Graffeo, Read, Pigott and Rivera concur; Judge Abdus-Salaam taking no part.

Order modified, without costs, by reinstating the second, third, fourth and fifth causes of action of the complaint and, as so modified, affirmed.